THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SANDY WILLIAMS, Defendant-Appellant.

First District (2nd Division)    No. 85—2933

Opinion filed July 28, 1987.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and Mitchell S. Sexner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Defendant Sandy Williams (Williams) was prosecuted under an information consisting of one count each of aggravated criminal sexual assault, armed robbery, and aggravated kidnapping and was convicted by a jury on all counts. At the sentencing hearing, the trial judge imposed concurrent sentences of 25 years in prison for each of the

crimes. Williams appeals both the convictions and the sentences imposed.

What follows is a summary of the evidence adduced at trial. On November 3, 1984, Gale was attending a wedding reception with her sister Rebecca. At about 10 p.m., Gale left the reception to get Rebecca's car, which was parked a half block away. As Gale opened the car door, she felt something in her back. Turning quickly around she saw a man with a gun pointed at her, but when she attempted to escape, Williams put the gun to her head, cocked the trigger, and forced her into the front passenger seat of the car. Williams told her that he needed some money, and when Gale indicated that she had only $5, he started the car, took the money, and pulled away while holding his arm around Gale with the gun pointed at her side.

When Gale asked Williams to let her go, he refused. He then drove to the beach, stopped the car, unlocked the back door, opened it, quickly went out the front door, locked it, and reentered the car through the back door. Williams motioned with his gun pointed at Gale and forced her to climb over the front seat. She then complied with Williams' request that she remove her clothes, and after he removed his own he forced her to perform fellatio. About five minutes later, after complaining that Gale was biting him and yelling, Williams pushed her on the seat and forced her to have sexual intercourse, after which he dressed and ordered her to dress.

When asked, Gale told Williams where she lived and that she had a stereo at home, whereupon Williams got into the front seat and had Gale sit next to him. He then remarked that he planned to drive Gale home, where she was supposed to get the stereo in order for him to sell it. Instead, he drove to a vacant lot and forced her into the back of the car again. Williams left the keys in the ignition and placed the gun between the door and the seat on the driver's side of the car. Both undressed and Williams once more compelled her to engage in sexual intercourse and oral sex.

When she began to dress, Gale reached to the floor for her shoes and felt Williams' wallet, which she pushed under the seat. He went out the back door, but before he could get into the front seat, Gale locked both doors, jumped into the front seat, and retrieved the gun. Williams began to bang on the window with his right hand, but she pointed the gun at him and threatened to blow his head off if he did not back away. As he jumped back, she started the car and drove off.

Gale drove until she reached a couple, who assisted her. When Cicero police officer DeFalco (DeFalco) arrived, Gale told him that she had been raped and that she had pushed the rapist's wallet under the

car seat. DeFalco checked the car and discovered a gun and a wallet. When he opened the wallet he found photo identification cards inside with the name "Sandy Williams" thereon. After DeFalco arranged for a Chicago policeman to handle the case, Officer Wilkosz (Wilkosz) arrived. Wilkosz searched the auto and discovered a man's jacket, which contained another wallet with papers. Gale told him that her assailant had been wearing the jacket, and when Wilkosz inspected the pockets he discovered a silver chain, a gold chain and a wedding band, all of which Gale described as having been taken from her.

Williams' alibi was as follows. Annette Williams (Annette), defendant Williams' wife, testified that he left home to purchase milk at approximately 8:30 p.m. on November 3, 1984. Williams testified that he was the victim of a robbery. An occupant of a four-door dark blue car pointed a gun at him, ordered him into the car, told him to give up his jacket and wallet, and lie on the floor. When the car stopped, he was told to leave the car. Williams then hailed a cab, which took him home, and the cab driver accepted Williams' remaining $5 bill as complete payment for the $18.75 fare.

Williams further testified that he called the police on the way home, but was told to call again when he got home. Consequently, he hung up and called his wife, which Annette confirmed. Williams arrived home at 11 or 11:30 p.m. Both Williams and his wife testified that he telephoned the police and that officers arrived and spoke with them. Williams told an officer what had transpired and was told that he had lost his coat and wallet to a prostitute. During cross-examination, Williams denied that he was told that he was lying or that the police did not believe his story.

Before Officer Gorecki (Gorecki), a police dispatcher, testified, Williams objected to the introduction of a police dispatch card. However, the trial judge allowed the officer to testify as to a limited portion of its contents, namely, that Williams had called the police department at 12:43 a.m. Gorecki did not testify as to the notation on the card which said "unfounded."

Prior to trial, Williams filed a motion requesting the judge to ask the following questions of prospective jurors regarding the People's burden of proof:

> "26. Do you agree that our system of Justice also carries a very strong presumption of innocence for all accused people?
>
> 28. Do you understand that throughout every part of this trial, the opening statements, the presentation of evidence and throughout your deliberations, that Sandi [sic] is presumed to be innocent of these charges?

30. Do you understand that one form of this protection is to place the burden of proof on the State?

31. Is it a fair request, in your mind, to make the State prove each and every element of the charges?

32. Will you make the State prove each and every element of the charges beyond a reasonable doubt?

33. If you believe at the conclusion of all the evidence in this case, that the prosecution has not proved each and every element of the offenses beyond a reasonable doubt, can you and will you return to this courtroom with a verdict of not guilty?

34a. Do you understand that Sandi [*sic*] does not have to prove anything?

34b. Do you understand that the law does not require Sandi [*sic*] or his attornies [*sic*] to produce any evidence or witnesses whatsoever?''

The trial judge declined to put the proffered questions to the venire; instead, he addressed them on the basic applicable principles of law as follows:

"That information is a charge against the defendant and constitutes no evidence whatsoever against him, it constitutes no evidence of guilt whatsoever, it is merely the method by which he is brought to trial. As a matter of fact, the defendant is presumed to be innocent of these charges and the presumption lasts throughout these proceedings right on through your deliberations until or unless you, the jury, those of you who are chosen, are satisfied beyond a reasonable doubt of the defendant's guilt of any or all of these charges.

The defendant has no burden of proof in this case, the defendant need not prove anything. The burden of proof, the burden of proving the defendant guilty of any or all of these charges is entirely upon the State's Attorney and that burden, as I have indicated, is proof beyond a reasonable doubt.

At the end of the case for those of you who are selected as the jurors, if you are satisfied beyond a reasonable doubt that the defendant is guilty of any of the counts in the information it will be your responsibility as jurors to sign the guilty verdict or verdicts which cover those counts. If any of you or if you as the jury at the end of the case are not satisfied beyond a reasonable doubt that the defendant is guilty of any of these counts or all of them it will be your responsibility to sign the not guilty verdicts."

Subsequently, the trial judge questioned each prospective juror indi-

vidually. Among other questions, each venireperson was asked, "Can you think of any reason why you could be anything but fair and impartial?" The five venirepersons who answered this question in the affirmative were excused.

## I

■ Williams argues that the trial judge committed reversible error by refusing to ask the venire the questions he proffered. However, a trial judge need not turn the process of selecting a jury into a catechetical exercise, for it is well settled that the manner and scope of *voir dire* is within the trial court's discretion. (*People v. Teague* (1982), 108 Ill. App. 3d 891, 894, 439 N.E.2d 1066, *cert. denied* (1983) 464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206.) In *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, our supreme court held that inquiries into a juror's prejudices against any of the basic guarantees "need not have been asked in precisely the form submitted, [although] the subject matter of the questions should have been covered in the course of interrogation on *voir dire*." (103 Ill. 2d 472, 477, 469 N.E.2d 1062.) The court went on to hold in *Zehr* that there was reversible error because the issues were not all included in *voir dire*.

■ By way of contrast, in the instant case the trial judge's general examination of the jury did contain all of the topics that were in Williams' proposed questions, and he does not contend otherwise. Hence, this case is analogous to *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1066, 469 N.E.2d 1137, which affirmed the trial court for the reason that the latter had sufficiently covered each subject in *voir dire* to eliminate the possibility of error. Accordingly, we hold that the trial court did not abuse its discretion when it refused to put Williams' questions to the prospective jurors in this case. *People v. Wilson* (1986), 141 Ill. App. 3d 388, 490 N.E.2d 177, is inapposite to the case at bar because there the trial judge did not adequately discuss all of the issues relevant to a proper selection of the jury.

## II

■ The People sought to admit the police dispatch card into evidence because it indicated that Williams telephoned the police at 12:43 a.m., which was approximately one hour later than the time to which he testified. However, over Williams' objection, the trial judge allowed the People to introduce only that portion of the contents of the card relating to the time of the call into evidence for the limited purpose of impeaching Williams. The trial judge did not permit the card itself to be admitted into evidence because it contained the nota-

tion "unfounded" thereon.

We assume, without deciding, that a dispatch card is a police record, for this issue does not seem to have been ruled upon by the courts of our State. Nevertheless, the contents of the dispatch card, except for the notation "unfounded," were properly admitted simply because they were not received as substantive evidence. Rather, the contents of the card were introduced and admitted for the limited purpose of impeachment. Police reports are admissible if they are used for a purpose other than as substantive evidence. For example, records of a police investigation may be used to refresh a witness' recollection (see *People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383; *Hall v. Baum Corp.* (1973), 12 Ill. App. 3d 755, 760, 299 N.E.2d 156), or for impeachment. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 268, 408 N.E.2d 1056.) One court has noted that, "[a]lthough police reports may not be used to divulge substantive evidence, they may be used for the limited purpose of impeachment." (*People v. Seider* (1981), 98 Ill. App. 3d 175, 191, 423 N.E.2d 1217.) Therefore, we hold that the trial court did not err by allowing portions of the contents of the police dispatch card into evidence.

### III

Williams raises several objections to his sentences. He complains that the trial court impermissibly used extended-term factors when pronouncing sentences within the statutory limits and improperly gave him an extended-term sentence for aggravated kidnapping.

Both aggravated criminal sexual assault and armed robbery are Class X felonies with maximum terms of 30 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(c), 18—2(b), 1005—8—1(a)(3).) Although the trial judge did state that Williams' actions constituted heinous behavior and wanton cruelty, which are not listed as factors to be used in aggravation when imposing a sentence within the statutory limits (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2), he considered other aggravating factors, most notably the harm to the victim, as well as mitigating factors, including Williams' rehabilitation potential. While at the sentencing hearing the trial judge mentioned heinous behavior, he did not state that he was basing his decision as to the sentence on this factor. As the People note, even if the trial court did consider the wanton cruelty of Williams, the statute (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2) does not prohibit consideration of this factor. Rather, when imposing a sentence greater than the statutory minimum, the sole requirement of the above-mentioned statute is that the trial court find that one of several enumerated fac-

tors was present. The trial judge in the instant case fulfilled that requirement by noting that Williams' behavior harmed the victim physically and emotionally.

In a case analogous to the one at bar, the court held that heinous conduct could be considered along with other factors when sentencing a defendant to a term within the statutory limits. (*People v. Butts* (1985), 135 Ill. App. 3d 132, 481 N.E.2d 987.) *Butts* is determinative of the issue in this case. Williams counters by citing *People v. Killen* (1982), 106 Ill. App. 3d 65, 435 N.E.2d 789. *Killen*, however, can be distinguished from our case, for as was noted in *Butts*, one of the bases for remand in *Killen* was that the reviewing court concluded that the defendant's behavior was heinous, a conclusion we do not reach in this case. (*People v. Butts* (1985), 135 Ill. App. 3d 132, 135, 481 N.E.2d 987; *People v. Killen* (1982), 106 Ill. App. 3d 65, 68, 435 N.E.2d 789.) Moreover, it is unclear as to whether the trial court in *Killen* examined all of the relevant aggravating and mitigating factors, which further distinguishes it from our case and from *Butts*.

Our supreme court has prescribed the limits of our review of sentencing decisions as follows:

"As this court has repeatedly emphasized, a reviewing court should not substitute its judgment or preference as to punishment for that of the sentencing court. The trial court is ordinarily best suited to tailor a sentence or other disposition to the needs of the case. It balances the appropriate factors in imposing sentence, and the exercise of this discretion should not be altered upon review absent abuse of that discretion." (*People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300.)

(See also *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Accordingly, we discern no reason to reduce the 25-year sentences which the trial judge imposed on Williams for aggravated criminal sexual assault and armed robbery.

■ However, we do find it necessary to reduce Williams' sentence for the crime of aggravated kidnapping, inasmuch as the statutory maximum for a Class 1 felony, which includes aggravated kidnapping, is 15 years. (Ill. Rev. Stat. 1985, ch. 38, pars. 10—2(b)(2), 1005—8—1(a)(4).) Because the trial court imposed a sentence of 25 years for the aggravated kidnapping charges, both parties agree that the sentence on that count should be reduced to the statutory maximum of 15 years. Both aggravated criminal sexual assault and armed robbery are Class X felonies with maximum terms of 30 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(c), 18—2(b), 1005—8—1(a)(3).) Obviously, then, these offenses are more serious than that

of aggravated kidnapping. It is also clear that the trial judge did not give Williams an extended sentence for either aggravated criminal sexual assault or armed robbery. The courts in this State have held, however, that "an offender can only receive an extended sentence for the most serious class of offenses for which he has been convicted." (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 538, 453 N.E.2d 849; see also *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Accordingly, this court reduces Williams' sentence for aggravated kidnapping to 15 years to run concurrently with his two other sentences, as it is empowered to do by Supreme Court Rule 615(b)(4). 87 Ill. 2d R. 615(b)(4); see also *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138; *People v. Jackson* (1986), 145 Ill. App. 3d 626, 647, 495 N.E.2d 1207.

Affirmed in part; sentence partially modified.

STAMOS and BILANDIC, JJ., concur.