THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MACK LEE, Defendant-Appellant.

First District (1st Division)   No. 1—87—1266

Opinion filed February 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Kathleen T. Kavanagh, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Mack Lee was charged with attempted armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)) and murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1). A jury found Lee guilty of attempted armed robbery, but could not reach a verdict on the murder charge. A mistrial was declared on the murder charge, and after a second trial, Lee was convicted of murder and sentenced to 80 years' imprisonment. For the reasons below, we affirm.

In the early morning of April 16, 1984, Gary Stevens was murdered in his apartment at 4755 N. Leavitt Avenue in Chicago, which he shared with Edward Aksomitis. Around midnight, Aksomitis let in Charles Holtz and the defendant, Mack Lee. Aksomitis had known Holtz for about two weeks, but did not know Lee. Lee and Holtz went into Stevens' bedroom, and Aksomitis went into the living room, where he fell asleep in front of the TV. Aksomitis did not wake up until some time later, when he heard a commotion at the apartment door. He saw Holtz and Lee struggling with two other men.

While Aksomitis had been asleep, Tom Hankes and Michael Finneran had arrived. They were met by Holtz, who was upset and said that Stevens was being hurt. Finneran looked into the bedroom and saw Lee and Stevens on the bathroom floor. Lee was on top, holding Stevens by the throat with one hand, wielding a butcher knife in the other hand. There was blood on the floors of the bedroom and bathroom, but Finneran did not see Lee stab Stevens. Finneran ran to the stairwell outside the apartment where Hankes was waiting. The apartment door shut behind them, and Hankes pounded on it.

Moments later, Holtz and Lee bolted from the apartment. Finneran and Hankes tried to stop them, but could not. Holtz and Lee ran down the stairs. Finneran and Hankes reentered the apartment and saw Stevens lying on the floor. Finneran told Hankes to call the police, then went after Holtz and Lee.

The first police officer to arrive at the apartment was Jack O'Ha-

nion. O'Hanion saw Stevens on the floor, and the blood and butcher knife. O'Hanion called for his supervisor and paramedics. Stevens was taken to Ravenswood Hospital, where he arrived with no blood pressure or pulse. He was given transfusions, but died. An autopsy revealed that Stevens had died from a stab wound to the chest that penetrated the right lung, liver, and pancreas. Forensic tests later revealed that the blood in the apartment and on the butcher knife was type A, the same as Stevens' blood, and that Lee's blood was type B. At the time of his arrest, Lee's clothing had splashes of both types of blood.

After calling the police, Hankes joined Finneran to chase Holtz and Lee. They caught up with Lee on a CTA train platform, where there were two policemen. Finneran, who did not know Lee, identified Lee to the officers by describing his clothing. Lee was arrested by Officer James Clark and taken to the police station. At the police station, Lee talked to Detectives Edward Day and Frederick Stone. After the interview, an assistant State's Attorney was summoned, and Lee made a formal statement.

Lee told the detectives that he had met Holtz on a bus earlier in the evening, and Holtz had told him of a plan to rob some people who lived on Lawrence Avenue. Lee agreed to go along and "knock off" the people and take whatever was valuable. They then went to the apartment of Aksomitis and Stevens. They went into the bedroom and sat down on the bed. Holtz then left and returned with a butcher knife, which he passed to Lee. Holtz then urged Lee to use the knife on Stevens. Holtz grabbed Stevens, and Lee stabbed him. Lee was in the act of tying up Stevens when two others entered the apartment. Lee and Holtz fled. He was later arrested at the CTA station.

Lee and Holtz were charged with murder, armed violence, and attempted armed robbery. Holtz pleaded guilty and did not face trial. Lee was found competent to stand trial after a hearing and was tried on the charges of attempted armed robbery and murder. Before the trial began, defense counsel moved to quash and suppress evidence resulting from Lee's arrest, and to suppress his statement to police. Both motions were denied and are not appealed.

The evidence produced at trial established the events above. The jury returned a verdict of guilty on the attempt charge, but could not reach a verdict on the murder charge. A mistrial was declared on the murder charge, and Lee was given a second trial.

Before the second trial, the trial court gave Lee the opportunity to plead guilty and receive a sentence of 42 years, which had been recommended in a presentencing hearing. Lee declined. The second

trial produced the same evidence as the first, including two vials of blood samples. The jury requested the blood samples during deliberation, and the trial court granted the request over defense counsel's objection. The jury returned a guilty verdict, and the trial court sentenced Lee to 80 years' imprisonment, with a concurrent 10-year sentence for attempted armed robbery. The trial court denied a motion to reduce the sentence to 42 years. Lee appeals.

■■ Lee first argues that the State failed to establish the specific intent necessary to prove attempted armed robbery. Lee contends that his statement to police, in which he stated that he and Holtz went to Stevens' apartment for the purpose of robbing the occupants, could not, by itself, establish specific intent. But the surrounding circumstances corroborate Lee's statement. (See *People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) The evidence shows that Lee engaged in a substantial act in furtherance of the robbery plan. Lee stated that he and Holtz planned to rob and kill someone that Holtz knew. Lee and Holtz then went to the apartment and together attacked Stevens. Lee's statement, corroborated by the surrounding circumstances of the crime, established specific intent.

■ Lee next argues that the trial court erred by granting, over defense counsel's objection, the jury's request to examine the vials of blood during deliberation. Lee contends that giving the vials to the jury over defense counsel's objection fed the jury's "ghoulish interest" and raised its passions. The vials contained samples that were tested to show that Lee and Stevens had different blood types. But the blood samples were not admitted to show that a crime had occurred, nor were they critical to identify Lee as Stevens' killer, or to place Lee at the scene. Moreover, the differences in the samples could not have been discerned by the jury and therefore could not have aided the jury in reaching a verdict. Because the samples could not have aided the jury, the trial court erred in allowing the jury to consider them.

■ But Lee was not substantially prejudiced by the error, given overwhelming evidence of guilt. Absent the testimony that Lee's and Stevens' blood types differed one from the other, both Aksomitis and Finneran placed Lee at the apartment at the time Stevens was killed. Finneran saw Lee struggling with Stevens, one hand on Stevens' throat, the other holding the butcher knife used to kill Stevens. Further, Lee confessed that he had stabbed Stevens at least once, and the autopsy showed that Stevens had been stabbed once. Given the evidence, it is doubtful that a jury reasonably could have doubted that Lee murdered Stevens. Although the trial court should not have sent

the vials of blood to the jury, the error was harmless beyond reasonable doubt. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

■ Lee next argues that the trial court failed properly to educate the jury concerning the presumption of Lee's innocence and right not to testify, and the State's burden of proof. Lee concedes that the trial court discussed these principles with the panel from which the jury was selected, but contends that the failure to question each juror as to his or her understanding of the principles was reversible error, citing *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. It is well settled that instructions by the court during *voir dire* substantially comply with *Zehr*. (*E.g., People v. Cole* (1988), 168 Ill. App. 3d 172, 522 N.E.2d 635, *appeal denied* (1988), 119 Ill. 2d 562; *People v. Williams* (1987), 159 Ill. App. 3d 527, 512 N.E.2d 35; *People v. Boswell* (1985), 132 Ill. App. 3d 52, 476 N.E.2d 1154, *rev'd on other grounds* (1986), 111 Ill. 2d 571, 488 N.E.2d 273.) To require the court to question each individual juror would therefore be an unwarranted extension of *Zehr*. The trial court's remarks during *voir dire* were further reinforced when the jury was instructed according to Illinois Pattern Jury Instructions, Criminal, Nos. 2.03 and 2.04 (2d ed. 1981), which address the presumption of innocence, the State's burden to prove quilt beyond reasonable doubt, and the defendant's right not to testify. Lee further contends that the failure to assure that the jury was questioned amounted to ineffectiveness of counsel, but if the trial court was not required to question the jurors, such failure would not constitute ineffectiveness of counsel. The record shows that the jury was properly educated.

■ Lee finally argues that his sentence of 80 years was improper, because a sentence of 42 years had been recommended after a presentence hearing after his first trial. The trial court imposed a sentence within statutory limits (see Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)), which will not be disturbed absent an abuse of discretion. (*People v. Johnson* (1986), 148 Ill. App. 3d 163, 504 N.E.2d 502. See also *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Griffin* (1988), 175 Ill. App. 3d 111, 529 N.E.2d 727.) The trial court was not constrained to follow the sentencing recommendation and specifically stated that the sentence was imposed based on the premeditation and cold-bloodedness of the killing, observations supported by the record. There was no abuse of discretion.

In summary, all of Lee's arguments are without merit. First, Lee's statement to police was corroborated by the surrounding cir-

cumstances of the crime and sufficient to prove the specific intent required to establish an attempted armed robbery. Second, although the trial court should not have allowed the jury to examine the vials of blood, any error was harmless, given the independent and overwhelming evidence of guilt. Third, the record shows that the jury was properly educated concerning the presumption of Lee's innocence and right not to testify, and the State's burden of proof. Finally, the trial court imposed a sentence within statutory limits, which in the absence of any abuse of discretion, should not be disturbed. Accordingly, Lee's conviction and sentence are affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.