(No. 39825.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THEODORE WAYNE LEFLER, Appellant.

*Opinion filed Sept. 29, 1967.—Rehearing denied Nov. 27, 1967.*

SAMUEL J. NAYLOR, of Carthage, and GEORGE J. LEWIS, of Quincy, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and C. DON WESTON, State's Attorney, of Macomb, (FRED G. LEACH, Assistant Attorney General, and WILLIAM L. RANDOLPH, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Theodore Wayne Lefler, was indicted by the grand jury of McDonough County for the murder of his infant daughter. A change of venue was granted and

the cause was tried by jury in Knox County, resulting in a verdict finding the defendant guilty of involuntary manslaughter. He was sentenced to the penitentiary for a term of not less than 9 nor more than 10 years and an appeal has been perfected to this court, since a substantial constitutional issue is involved.

Although we do not find it necessary to decide whether the evidence was sufficient to establish the defendant's guilt, some summary of the evidence is necessary. The defendant's wife testified that she left home at about 3:30 P.M. on January 16, 1965, and that the defendant stayed home to care for their daughter, who was about 7 weeks old. When Mrs. Lefler returned about two hours later she noticed that something was wrong with the baby and she and the defendant took the child to the hospital. The baby was examined by a nurse and a physician and was pronounced dead.

X-ray photographs were taken and were admitted in evidence. These photographs showed a fracture of the skull but no other fractures. An autopsy was also performed and the doctor testified that it revealed numerous hemorrhages along the vertebral column near the junction of the ribs, and also showed delicate lateral fractures of several ribs. The autopsy also showed a skull fracture and extensive brain damage. The doctor testified that the rib injuries could have been caused by a crushing type of injury and that the skull fracture and brain damage could have been caused by a blunt force.

The evidence showed that the defendant was questioned at length at the funeral home on the day following the death of the child and was taken to Springfield the next day for the purpose of taking a lie-detector test. The test was not given but the defendant was questioned by the polygraph operator. Over the objections of the defendant a transcript of his oral statement at the funeral home was admitted in evidence and the polygraph operator also testi-

fied as to his conversations with the defendant. In addition, a signed statement which the defendant executed in Springfield was admitted in evidence over defendant's objection.

Prior to trial the defendant moved for a hearing out of the presence of the jury to determine whether these three statements were voluntary. The court granted his request as to the written statement and a hearing was held, resulting in a finding that the statement was voluntary. However, the court denied the defendant's request for a preliminary hearing to determine the voluntary nature of the two oral statements, apparently on the ground that the statements were largely exculpatory and at the most constituted admissions rather than confessions. The defendant's first contention on this appeal is that the court erred in denying his request for a preliminary hearing as to these statements.

In the first statement the defendant was questioned by the sheriff, the coroner and an assistant State's Attorney. He was repeatedly exhorted to tell the truth and was told that the authorities could not "buy" his explanation that the defendant did not know how the injuries occurred. The authorities insistently suggested to the defendant that he might have squeezed the baby to stop her from crying and that he might have banged her head on the chair for the same reason. The defendant, after consistently denying that he intentionally squeezed the child, eventually said, "Well, I squeezed her and I reckon that could have broken her ribs some way." When he was asked why he squeezed the baby he replied, "Oh, I might have wanted her to stop crying." At a later point in the questioning the sheriff told him that if he had done something on the spur of the moment he should tell them about it so that they could help him and suggested that perhaps he needed psychiatric treatment. The defendant again admitted squeezing the baby to keep her from crying and also admitted that the baby had hit her head against the arm of the chair. The polygraph operator testified, over objection, as to his conversations

with the defendant and said that the defendant told him that he picked up the baby and shook it to try to stop it from crying and that he squeezed the child.

While the statements of the defendant were not in the strict sense of the word confessions to the crime of murder, it is apparent that they were not entirely exculpatory and that his admissions that he squeezed the child to keep her from crying were incriminating. The authorities in this State appear to be conflicting on the question of whether a preliminary hearing is required to determine the voluntary nature of an admission, as distinguished from a confession. For example, in *People* v. *Speice,* 23 Ill.2d 40, 46, and *People* v. *Stanton,* 16 Ill.2d 459, 467, it was held that where a statement is a mere admission no preliminary hearing is required. However, in *People* v. *Hiller,* 2 Ill.2d 323, where the prosecution attempted to impeach the defendant by reading from a statement he had given, the court held that there should be no distinction between an incriminating statement and a confession and that an incriminating admission should not be admitted in evidence over objection without a preliminary hearing to determine whether it was voluntary. In our later decisions, without citing or referring to the line of cases represented by *Speice* and *Stanton,* we held, relying upon the *Hiller* case, that the voluntary character of any out-of-court statement must first be established before the statement may be used, even for impeachment purposes. (*People* v. *Newman,* 30 Ill.2d 419, 424; *People* v. *Tate,* 30 Ill.2d 400, 405.) Our adoption of this rule finds support in the decision of the U.S. Supreme Court in *Miranda* v. *State of Arizona,* 384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629. We believe that the rule enunciated in these recent decisions of our court and the U.S. Supreme Court, is the proper one and we adhere to it in this case. We must, therefore, hold that the trial court erred in denying the defendant's request for a hearing to determine the voluntary nature of his admissions. As

pointed out, however, in *People* v. *Georgev, ante,* p. 165, the distinction between confessions and admission is preserved by section 114—10 of the Code of Criminal Procedure in connection with the furnishing of a list of witnesses to oral statement. Ill. Rev. Stat. 1965, chap. 38, par. 114—10.

Because of the erroneous ruling of the trial judge on the necessity of a preliminary hearing this cause must be reversed and remanded for a new trial and it is not necessary to consider all of the other claims advanced by the defendant since many of them relate to matters which will probably not arise on a new trial. However, we believe that it is appropriate to discuss two of the other contentions. Over the defendant's objections the court permitted the exhibition to the jury of color photographs taken during the process of the autopsy. These pictures were projected on a screen approximately 44″ by 26″ in size. One of the pictures showed the chest cavity after the breast bone, a portion of the ribs and the lungs, heart and main blood vessels had been removed. The other photographs showed the skull and portions of the brain after an area of the skull had been removed. The doctor who performed the autopsy testified in detail as to his findings and without objection, used a blackboard to illustrate the injuries, some of which were not shown in the color pictures.

Whether a photograph of a deceased person should be admitted in evidence normally rests within the discretion of the trial court and if such a picture has sufficient probative value it may be admitted in spite of the fact that the photograph may be gruesome and inflammatory. However, in view of the prejudicial emotion that might be aroused by the introduction of a photograph of the victim, courts have been strict in the requirement that a proper purpose be shown for the introduction of such pictures. In *People* v. *Jackson,* 9 Ill.2d 484, the court held that a photograph which was taken after an autopsy and displayed a portion

of the autopsic incision was improperly admitted in evidence. In the present case the testimony was that the body of the deceased bore little superficial evidence of injury and the gruesome nature of the pictures was caused almost entirely by the autopsy procedure. We believe that the pictures had little probative value in view of the detailed testimony by the physician and the fact that the nature and extent of the injuries was not disputed. The pictures were of such a nature as to arouse strong emotions on the part of the jurors and we hold that the court erred in permitting these photographs to be shown to the jury.

The defendant also claims that the court erred in instructing the jury. We have examined the instructions and find that on the whole the jury was properly instructed. However, the court refused an instruction to the effect that if the deceased met her death by misadventure without any conscious disregard by the defendant for her safety, the jury should find the defendant not guilty. There was evidence in portions of the defendant's statement that he did not intentionally squeeze the baby or bump her head and that he did not know how the injuries occurred. The defendant was entitled to an instruction on his theory of the case and the court should have given this instruction. The defendant also submitted an instruction that if his conduct could from the evidence be referred to one of two intentions, one criminal and one innocent, it was the duty of the jury to presume that such conduct was actuated by innocent intent. Such an instruction is proper where opposing theories as to guilt or innocence arise out of the same facts, and in our opinion the instruction should have been given in this case. *McCoy* v. *People,* 175 Ill. 224.

The judgment of the circuit court of Knox County is reversed and the cause is remanded for a new trial in accordance with the views expressed herein.

*Reversed and remanded.*