THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW KOKORALEIS, Defendant-Appellant.

First District (4th Division)   No. 85—0797

Opinion filed April 2, 1987.—Rehearing denied May 1, 1987.

520

James J. Doherty, Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Assistant State's Attorney, and Renee G. Goldfarb, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant Andrew Kokoraleis was found guilty of murder, rape, and aggravated kidnaping. The trial court sentenced Kokoraleis to natural-life imprisonment for the murder, an extended-term sentence of 60 years for the rape, and an extended-term sentence of 30 years for the aggravated kidnaping.

Kokoraleis now appeals, contending: (1) that the trial court erred in admitting evidence of other offenses committed by Kokoraleis; (2) the *voir dire* examination of the jury was inadequate; (3) Kokoraleis' jury was conviction-prone; (4) the State failed to establish that Kokoraleis was informed of his right to counsel prior to police questioning; (5) the trial court erred in admitting certain photographs; and (6) the trial court erred in imposing an extended-term sentence for the lesser class felonies of aggravated kidnaping and rape.

We affirm Kokoraleis' conviction and sentence for the murder and affirm his convictions for rape and aggravated kidnaping. However,

we vacate the extended-term sentences imposed by the trial court and, pursuant to Supreme Court Rule 615 (87 Ill. 2d R. 615), modify Kokoraleis' sentences to 30 years for the rape and 15 years for the aggravated kidnaping.

BACKGROUND

On September 8, 1982, the body of Rose Beck Davis (the deceased) was found in a gangway located at 1254 North Lake Shore Drive. The deceased was naked, had a sock tied around her neck and her right wrist, had two cuts across her breasts, and two puncture wounds in her stomach. During an autopsy, a 4-inch piece of wood was extracted from the deceased's vagina.

On October 20, 1982, police spotted a red van that they had been looking for in relation to another incident. The police stopped the van and found that Edward Sprietzer was driving it. The police later learned that Robin Gecht was the owner of the van. The police placed the van in inventory. A search of the van revealed three knives and a milk crate. The knives had blood on them.

On November 7, 1982, Sprietzer led police to Kokoraleis' residence. When Kokoraleis came to the door, the police requested that he come with them to a local police station to answer questions concerning Sprietzer and Gecht. Kokoraleis agreed to go with the police and got a coat from inside his residence.

At the police station, the police read Kokoraleis his *Miranda* rights. Thereafter, Kokoraleis revealed that several months earlier, he, Sprietzer, and Gecht were driving one night in the Rush Street area. They saw a white woman walking by herself. They grabbed the woman and put her into Gecht's van. They took the woman to a gangway where they beat her, raped her, and finally killed her. Kokoraleis claimed that it was pursuant to Gecht's demand that he, Kokoraleis, stabbed the deceased in the abdomen with a knife. Kokoraleis stated that during the trip along Rush Street, he had been seated on a milk crate inside the van. Kokoraleis described the area, including the gangway, where the three men had committed the murder.

Kokoraleis also admitted that he, Sprietzer, and Gecht had killed two other women, Linda Sutton and Shui Mak. In addition, Kokoraleis claimed that he was involved in the murders of some 15 to 16 other women.

Kokoraleis repeated his statement to an assistant State's Attorney and again to a court reporter. Following this, Kokoraleis was arrested and charged with aggravated kidnaping, rape, and murder.

Prior to trial, Kokoraleis moved to have his confession sup-

pressed. Kokoraleis contended that the police had failed to inform him of his right to have counsel present during the police questioning. In response, the police testified that they had informed Kokoraleis several times of his *Miranda* rights and that throughout his questioning, Kokoraleis acknowledged that he was aware of his rights but nevertheless wished to voluntarily make a statement. An assistant State's Attorney testified at the hearing that he too had given Kokoraleis his *Miranda* warnings. The record further reveals that Kokoraleis was told of his *Miranda* rights before the beginning of his statement to the court reporter and that Kokoraleis signed a written rights waiver form at that time. After reviewing the evidence set forth above, the trial court denied Kokoraleis' motion to suppress.

Kokoraleis also moved for a motion *in limine* before trial. In his motion, Kokoraleis asked the trial court to bar the State from introducing evidence concerning any offense other than the instant murder. The trial court denied Kokoraleis' motion, finding that the evidence of other offenses fell within the *modus operandi* exception.

Prior to *voir dire*, the trial court requested both the State and Kokoraleis to prepare a list of questions for the trial court to ask potential jurors. The following day, the parties filed an agreed list of questions. Kokoraleis requested that the trial court refrain from asking any questions about the death penalty. The trial court denied Kokoraleis' request. The trial court subsequently excused several jurors because they were absolutely opposed to the death penalty. Kokoraleis moved for a mistrial but his motion was denied.

At trial, the information set forth above, including Kokoraleis' multiple admissions and statements, was presented to the jury by several witnesses, including police officers and an assistant State's Attorney. Medical testimony revealed that the deceased had been raped and that she died as a result of multiple stab wounds and beatings with a blunt instrument.

In his defense, Kokoraleis asserted that he was at home and that he was nowhere near the Rush Street area on the night of the murder. Kokoraleis further testified that police officers beat him during the interrogation and that it was only because of the beatings that he ultimately confessed to the murder. Kokoraleis also stated that he knew the details of the murder (*i.e.*, location, instruments used, time, etc.) because the police had told him what they were before he made his formal statements.

In rebuttal, the police officers denied beating Kokoraleis and denied telling him of the facts involved in the murder.

Following the court's instructions, the jury returned a verdict of

guilty as to the murder, rape, and aggravated kidnaping. Kokoraleis now brings this appeal seeking to have the jury's verdict reversed and the matter remanded for a new trial.

OPINION

I

Kokoraleis first contends that the trial court erred in permitting the State to introduce evidence of offenses other than the murder of the deceased. Kokoraleis argues that the trial court abused its discretion in that identification (of the murderer) was not at issue. In addition, Kokoraleis asserts that the trial court incorrectly instructed the jury with regard to the evidence of other offenses.

The general rule in Illinois is that evidence of other offenses other than that for which a defendant is being tried is inadmissible. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) There are, however, several exceptions to the general rule. Evidence of other offenses which tends to show motive, intent, identity, absence of mistake, or *modus operandi* is admissible even though it may also hint at a propensity to commit crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) *Modus operandi* means a "pattern of working" and refers to a pattern of criminal behavior so distinct that separate crimes can be recognized as the work of the same person. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) The crimes involved need not be identical but must nevertheless possess distinctive features that are not common to most offenses of that type. (138 Ill. App. 3d 481, 487, 485 N.E.2d 1292.) A trial court's decision that evidence of other offenses falls within the *modus operandi* exception will be overturned only where an abuse of discretion is evident. *People v. Martin* (1979), 80 Ill. App. 3d 281, 399 N.E.2d 265.

In the case at bar, the trial court permitted the State to introduce evidence of two other murders, those of Linda Sutton and Shui Mak. The trial court found that the Sutton and Mak murders were similar to that of the deceased in that: (1) the same three men (Kokoraleis, Gecht, and Sprietzer) were involved in each murder; (2) Gecht's red van was used in each murder; (3) each murder involved women who were alone at the time of their abduction; (4) each woman was taken to a secluded area away from public view; (5) each woman was raped before she was murdered; (6) each woman was beaten or stabbed with a blunt instrument such as a wooden hatchet; and (7) each woman was left to die where she had been raped. Based on these similarities, we believe the trial court could properly find that

the three murders contained a similar "pattern of working," thus falling within the *modus operandi* exception. Accordingly, we reject Kokoraleis' claim that the trial court erred in permitting the State to introduce evidence of the Sutton and Mak murders.

■ Kokoraleis' contention that the trial court erred in permitting the State to introduce evidence of other offenses because "identification was not at issue" is also without merit. In his opening statement, Kokoraleis' attorney stated: "The issue in this case that you have to determine is who did it and who may be responsible for her death." Likewise, Kokoraleis' argument regarding the trial court's allegedly erroneous instructions is misplaced. The record reveals that Kokoraleis' own attorney prepared the instruction of which he now complains.

In sum, we believe that the trial court committed no error in permitting the State to introduce evidence of other offenses containing the same *modus operandi* as that before the jury.

## II

■ Kokoraleis' second argument is that the *voir dire* was inadequate to disclose jurors' potential bias. Kokoraleis contends that several jurors were not asked the questions tendered to the court by the parties' attorneys and that the trial court's failure to do so resulted in a jury that may have been biased against Kokoraleis.

The record reveals, however, that the trial court did in fact ask prospective jurors the questions prepared by counsel. The court asked the questions of the entire group of jurors rather than to each individually. Defense counsel did not object to this procedure during *voir dire* nor did defense counsel object at the conclusion of the jury's selection. Consequently, any complaint that Kokoraleis may now have with regard to jury selection was waived, for it is well settled that an objection must be raised in order to preserve an issue for review on appeal. See, *e.g.*, *People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744.

## III

■ Kokoraleis next asserts that his jury was conviction-prone because: (1) the trial court excused several jurors because they absolutely opposed the death penalty; and/or (2) the jurors were asked certain questions about the death penalty and were thus more prone to convict Kokoraleis.

This argument has been rejected by both the Illinois Supreme Court (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *Peo-*

*ple v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402) as well as the United States Supreme Court (see *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758). Accordingly, the trial court committed no error in posing its questions on the death penalty to prospective jurors.

## IV

██ █ Kokoraleis' fourth assignment of error is that the State failed to establish that Kokoraleis was adequately informed of his right to counsel prior to his.questioning by police. Kokoraleis asserts that the trial court erred in denying his motion to suppress, for several of the incriminating statements that he made to police were a result of the police violating Kokoraleis' *Miranda* rights.

Under the United States Supreme Court's ruling in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, a defendant has a constitutional right to be informed that he has the right to remain silent and that he has the right to have an attorney present at any police questioning. The warnings given to a defendant need not follow a ritualistic formula (*People v. Townsend* (1972), 6 Ill. App. 3d 873, 286 N.E.2d 801), but must convey the concept that the defendant can have an attorney present if he so desires (*People v. Walker* (1974), 18 Ill. App. 3d 351, 309 N.E.2d 716). Where a defendant claims through a motion to suppress that his *Miranda* rights have been violated, a trial court's decision denying that motion will be overturned only where the decision is contrary to the manifest weight of the evidence. *People v. Allen* (1983), 116 Ill. App. 3d 996, 452 N.E.2d 636.

In considering Kokoraleis' motion to suppress, the trial court heard Kokoraleis' testimony and the testimony of the police officers and States' Attorney involved. At that hearing, Kokoraleis contended that the police told him that he could have an attorney present *prior* to questioning, but not *during* the questioning itself. The police officers, on the other hand, maintained that they fully informed Kokoraleis of his *Miranda* rights on seven separate occasions and that Kokoraleis freely and voluntarily elected to waive his rights and make his statements.

██ The trial court was in a superior position to judge the credibility of the witnesses and the weight to be accorded their testimony. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) This, combined with our review of the record, convinces us that the trial court's decision denying Kokoraleis' motion to suppress. was not against the manifest weight of the evidence.

## V

■■ Kokoraleis also charges that the trial court erred in admitting certain photographs into evidence. Kokoraleis argues that the photos were gruesome and that their prejudicial effect outweighed any probative value they possessed.

The State responds, however, that the photographs were necessary to prove the *corpus delicti* of the offense of murder. It is the State's position that proof of criminal agency causing death is a necessary element of murder and that the photographs in question demonstrated that the deceased's demise resulted directly from Kokoraleis' criminal acts.

In *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, the Illinois Supreme Court stated:

"It is the rule that where photographs are relevant to establish any fact in issue that they are admissible in spite of the fact that they may be of a gruesome nature." 41 Ill. 2d 177, 202, 242 N.E.2d 208.

Whether to allow the introduction of evidence such as photographs is within the sound discretion of the trial court, and we will not overturn a trial court's decision unless an abuse of discretion is present. *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.

■■ We have reviewed the photographs complained of by Kokoraleis and do not believe the trial court abused its discretion by allowing the photographs to be shown to the jury. We note, in this regard, that the photographs depicted the deceased as she was found by police, that her condition indicated that force had been used, and that her wounds could have been inflicted by the knives found in Gecht's van. We further note that the trial court did not allow all of the requested photographs to be shown but rather limited the State to those pictures related to issues of the case. In light of the foregoing, we find no error in the trial court's decision to allow the jury to see the photographs.

## VI

■■ Kokoraleis' final argument relates to the sentence imposed upon him.[1] Following the jury's decision, the trial court sentenced Ko-

---

[1]In his brief, Kokoraleis also asserts that sections 1005—5—3.2(b)(2), 1005—8—1(a), and 1005—8—2(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2(b)(2), 1005—8—1(a), 1005—8—2(a)(1)) are unconstitutional as violative of Kokoraleis' equal protection and due process rights. A review of the record reveals, however, that Kokoraleis failed to raise this argument before the trial court and in so doing the issue was waived. *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.

koraleis to natural-life imprisonment for the murder and also gave Kokoraleis extended-term sentences of 60 years for the rape and 30 years for the aggravated kidnaping. Kokoraleis contends that the trial court's extended-term sentences were in conflict with the supreme court's decision in *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.

The State agrees with Kokoraleis that the extended-term sentences for the lesser class felonies of rape and aggravated kidnaping should not have been imposed in light of the supreme court's holding in *Jordan*. Accordingly, the extended-term sentences imposed by the trial court are vacated. In addition, however, pursuant to Supreme Court Rule 615 (87 Ill. 2d R. 615) we modify the sentences imposed on Kokoraleis to be 30 years for the rape and 15 years for the aggravated kidnaping.

CONCLUSION

Accordingly, for the reasons set forth above, we affirm Kokoraleis' conviction and sentence for murder and affirm his conviction for rape and aggravated kidnaping. In addition, we vacate the trial court's extended-term sentences for Kokoraleis' rape and aggravated-kidnaping convictions and modify those sentences as set forth above.

Affirmed in part, vacated in part, and modified in part.

JOHNSON and JIGANTI, JJ., concur.