THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ABRAHAM HOPKINS, Defendant-Appellant.

First District (1st Division)   No. 85—2102

Opinion filed September 8, 1987.

James J. Doherty, Public Defender, of Chicago (Kathleen M. Pantle, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Peter D. Fischer, and Paul A. Tanzillo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a jury trial, defendant, Abraham Hopkins, was found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and was sentenced to 35 years' imprisonment.

On appeal, defendant contends that: (1) he was not proved guilty of murder beyond a reasonable doubt; (2) the trial court erred in refusing to question each prospective juror during the *voir dire* about the effect defendant's failure to testify would have on each of them; (3) the trial court erred in publishing photographs of the deceased to the jury; and (4) he was denied effective assistance of counsel. For the reasons that follow, we affirm.

The defendant and the victim, Charles Davis, were acquaintances. On the night of the murder, March 30, 1983, defendant and Davis were seen arguing in a bar, the Pine Inn Tavern, which they left together at about 9 p.m.

On the same evening at about 9 p.m., a witness, who was walking towards another bar, Edi's Game Room, which is across the street from the Pine Inn, saw two men "tussling" in the alley behind the Pine Inn. After the witness saw one of the men stab the other, he ran into Edi's and told the people there what he had just seen. Three patrons of Edi's went outside and saw a man, Davis, who had been stabbed. They saw another man in the alley with a knife in his hand. They chased the man but eventually lost him.

One week later, on April 6, 1983, the police arrested the defendant for Davis' murder. On the same date, the four witnesses from Edi's identified the defendant in a lineup. At trial, defendant's alibi was that at the time of the murder he was with his girlfriend and his sister at his sister's house. Defendant's sister testified on behalf of defendant and corroborated his alibi.

Defendant first contends he was not proved guilty of murder beyond a reasonable doubt because the State's evidence was confused and contradictory, it contained uncertain identification testimony, and defendant had an alibi which was not contradicted. Specifically, defendant alleges that the State's five main witnesses contradicted each other concerning what the season and weather were on· March

30, 1983, the night of the murder. One witness testified that it was summer or spring and had not been raining. Another witness testified that it was winter or fall and had been raining. A third witness said it was August, had not been raining and was kind of cold outside. Another witness stated it was fall and had not been raining. The final witness testified it was March, it had not been raining, but it had been drizzling.

Defendant also argues that the witnesses contradicted each other concerning the length of the knife they had seen the man in the alley holding on the night of the murder. Two witnesses testified it was 12 inches long, another said it was 8 inches, and another stated it was 9 or 10 inches.

In addition, defendant asserts that three of the State's witnesses recently received sentences of imprisonment for armed robbery and robbery which were entered pursuant to plea agreements. Thus, defendant argues, those witnesses lacked credibility.

Defendant further asserts that the State had no physical evidence, such as a knife or clothing, connecting him to the murder. In particular, the State failed to produce a dark jacket with stripes down the sleeves, which the State's witnesses had seen on the offender, and which one witness, who knew the defendant, stated that defendant owned.

This court will not substitute its judgment for the trier of fact concerning the weight of the evidence and the credibility of the witnesses unless the testimony is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In addition, the positive identification of a single witness is sufficient to support a conviction provided the witness is credible and observed the offender under conditions which would allow a positive identification to be made. (67 Ill. 2d 564, 578, 367 N.E.2d 1313; *People v. Nims* (1986), 156 Ill. App. 3d 115, 119, 505 N.E.2d 670.) A conviction under these circumstances may stand even where the defendant presents an alibi which is corroborated. (156 Ill. App. 3d 115, 50 N.E.2d 670.) The following factors may be considered in evaluating identification testimony: (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the offender; (4) the level of certainty which the witness demonstrates at the confrontation; and (5) the length of time between the crime and the confrontation. *People v. McKinley* (1977), 69 Ill. 2d 145, 152, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S.

Ct. 1623.

■ In the case at bar, we conclude that the identification testimony was sufficient to convict defendant because: the witnesses testified that they saw the assailant under a street light from 10 to 11 feet away for about 5 to 10 seconds; their attention was focused on the assailant; the witnesses were certain in their identifications of defendant, both at the lineup and in court; and they identified defendant at the lineup only one week after the murder. The credibility of the witnesses' identification and other testimony was for the jury's determination. Although the witnesses contradicted each other in certain aspects and the defendant presented an alibi corroborated by another witness, it was for the jury to evaluate all of the witnesses. It did so and found defendant guilty. After reviewing the record, we cannot say that the verdict, based on all of the evidence, was so improbable that this court should reverse it.

■ Next, defendant contends the trial court erred in declining to question each juror specifically during the *voir dire* on the effect that the failure of the defendant to testify would have on each of them.

Prior to trial, defendant submitted to the court a supplemental question for the court to ask prospective jurors during *voir dire*. The question concerned a defendant's presumption of innocence, the State's burden of proof and a defendant's failure to testify. The court refused to ask the question because defendant was not sure whether or not he was going to testify.

Prior to beginning the *voir dire*, the court told the venire that the defendant is presumed innocent and the State has the burden of proving him guilty beyond a reasonable doubt. During the *voir dire* and in front of the entire venire, three prospective jurors told the judge they would have a problem if defendant failed to testify. The judge explained that the defendant did not have to testify to prove his innocence. Thereafter, the court, on its own motion, excused those jurors.

In addition, because the defendant did not testify during the trial, the court instructed the jury:

> "The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict." Illinois Pattern Jury Instructions, Criminal, No. 2.04 (2d ed. 1981).

Defendant argues that the court violated *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, which requires jurors to know the following:

> "[T]hat a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be

proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." 103 Ill. 2d 472, 477, 469 N.E.2d 1062.

Defendant maintains that telling the jury generally about the above propositions and not questioning each juror individually was error. In addition, defendant alleges that the instruction the court submitted to the jury did not cure the failure to question each juror during the voir dire. We disagree.

Contrary to defendant's assertion, Zehr requires only that the "subject matter" of a defendant's presumed innocence, right not to testify and the State's burden of proof, need be covered during the interrogation on voir dire. The exact questions "need not [be] asked in precisely the form submitted" by the defendant. 103 Ill. 2d 472, 477, 469 N.E.2d 1062.

In the case at bar, the trial court substantially complied with Zehr by doing the following: (1) the court emphasized the State's burden of proof and defendant's presumption of innocence before voir dire began; (2) during voir dire, in the presence of the entire venire, the trial judge discussed with three prospective jurors the fact that the defendant did not have to testify, and during each discussion the judge repeatedly stated that defendant had no obligation to testify; and (3) the court submitted to the jury an instruction specifically stating that in reaching its verdict, the jury should not consider the fact that defendant did not testify. The jurors were clearly apprised of the State's burden of proof and defendant's presumed innocence and right not to testify. The trial judge's general examination of the jurors contained all of the topics required under Zehr. The court did not abuse its discretion in refusing to ask each individual juror the supplemental question which defendant tendered. See People v. Williams (1987), 159 Ill. App. 3d 527, 532.

■ Defendant next contends that photographs of the deceased should not have been published to the jury as they were irrelevant and inflammatory. Those pictures showed the stab wounds inflicted in Davis' heart and abdomen. Some photographs showed Davis' exposed intestines.

Defendant argues that the photographs were not relevant to establish any material fact in the case because the following issues were not disputed: (1) cause of death; (2) that a criminal offense occurred; and (3) identification of the victim. Defendant maintains that the only issue at trial was whether defendant was the assailant. In any event, defendant asserts that many of the photographs were merely duplicates and added nothing to the jury's understanding of the case. We

disagree.

The general rule is that whether to admit photographs into evidence lies within the sound discretion of the trial judge. As long as the photographs have sufficient probative value, they are admissible despite their gruesome and inflammatory nature. (*People v. Lefler* (1967), 38 Ill. 2d 216, 221, 230 N.E.2d 827; see also *People v. Kokoraleis* (1987), 154 Ill. App. 3d 519, 527, 507 N.E.2d 146.) We have reviewed all of the photographs in the case at bar and we do not believe the trial court abused its discretion by permitting the jury to see them. The photographs depicted the stab wounds; they corroborated testimony as to the cause of death and the number and location of the wounds; and they showed the manner in which the wounds were inflicted and the willfulness of the act.

■ Finally, defendant contends that he received ineffective assistance of counsel due to the following errors of defense counsel: (1) he made few objections when the prosecutor was leading the State's witnesses; (2) he failed to object when a witness testified as to prior crimes committed by defendant against her daughter; (3) during his closing argument, he erroneously claimed that the medical examiner had stated that an ice pick had caused the fatal injuries to Davis; and (4) he consistently asked witnesses to repeat their answers. In addition, defendant submits that defense counsel's performance could have been affected by the fact that during the trial he was ill with cancer and on medication (he died shortly after trial).

In order to show ineffective assistance of counsel, a defendant must show, first, that his counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; see also *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061 (where the Illinois Supreme Court adopted *Strickland*).

■ We have examined the record and find that defense counsel presented an able defense for defendant through his direct examination, his cross-examinations of the State's witnesses, and the making of appropriate objections where necessary. The errors which defendant alleges occurred were merely trial tactics or strategy on the part of defense counsel or isolated instances of alleged incompetence which fail to establish incompetent representation. (See *People v. Leverston* (1985), 132 Ill. App. 3d 16, 34, 476 N.E.2d 1344, *appeal denied* (1985), 108 Ill. 2d 581.) Moreover, the record fails to reflect that counsel's illness interfered with his performance at trial.

Defendant argues however, that the instant case is similar to *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136, *cert. denied* (1984), 467 U.S. 1218, 81 L. Ed. 2d 371, 104 S. Ct. 2666, where the Illinois Supreme Court reversed a defendant's conviction and remanded for a new trial because the defendant's attorney was disbarred after the trial for misconduct which occurred at the same time as the trial. The court determined that the disciplinary proceedings, coupled with the additional burden placed on counsel by defending three clients simultaneously for capital murder before two juries, may have had an effect on his representation of the defendant. 93 Ill. 2d 309, 324-25, 444 N.E.2d 136.

We find *Williams* to be inapplicable to the present case because in *Williams*, the court limited its decision to the facts of that case when it stated that under "the unique circumstances and sequence of events in [this] capital case, which will rarely, if ever, be duplicated," the interests of justice required that the defendant be granted a new trial. (93 Ill. 2d 309, 325, 444 N.E.2d 136; see also *People v. Williams* (1985), 138 Ill. App. 3d 1041, 1044, 487 N.E.2d 13; *appeal denied* (1985), 111 Ill. 2d 595.) Unlike in *Williams*, defendant's attorney in the instant case was not going through disciplinary proceedings during the trial, defendant was not sentenced to death, and defense counsel represented only one client, the defendant.

Under the totality of circumstances, we conclude that defendant has failed to show how his attorney's alleged incompetence prejudiced his defense and that the result of the trial would have been the same without the alleged errors.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.