THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENT STARKS, Defendant-Appellant.

First District (2nd Division)   No. 85—1582

Opinion filed April 26, 1988.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Stephen M. Sutera, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant, Kent Starks, appeals from his conviction at a jury trial and sentence to concurrent terms of 40 years' and 10 years' imprison-

ment for murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1) and attempt to commit armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 8—4). This was defendant's second trial; his earlier one was the subject of our opinion in *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548.

On appeal, defendant contends that:

(1) The trial judge failed to ask three requested *voir dire* questions deemed essential to selection of a fair and impartial jury in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062.

(2) The State's closing argument denied him a fair trial and the right not to have his failure to testify commented on.

(3) Comments by the trial judge chilled his right to testify in his own behalf.

(4) The Cook County public defender had a conflict of interest in representing both him and a prosecution witness against whom charges were pending.

(5) The judge erred in refusing defendant's "innocent hypothesis" instruction.

(6) Imposition of a 40-year sentence was an abuse of discretion.

(7) The judge erred in considering defendant's supposed lack of remorse in sentencing.

(8) The judge erred in sentencing defendant without a proper presentence report or relevant information, and counsel was incompetent for not adducing evidence in mitigation.

We reverse on the basis of defendant's first contention regarding the *voir dire*.

## FACTS

Defendant was arrested on December 25, 1980, indicted by a grand jury, and at his first trial convicted by a jury of the murder and attempt to commit armed robbery of John Lipinski. He was sentenced to concurrent terms of 40 years' and 10 years' imprisonment, respectively. We later reversed his convictions in *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548. Upon remand, his case was assigned to a new trial judge.

Prior to jury selection for his new trial on April 11, 1985, defense counsel submitted eight questions for use during *voir dire*, including three that are at issue in the present case. The questions and the trial judge's responses to their submission are set forth hereinafter.

Jury selection proceeded. The trial judge's pertinent statements and questions to the venire are likewise set forth hereinafter.

At trial, which began on April 12, 1985, Mark Jones, an acquaintance of defendant, testified that he, Mario Godsey, and defendant were walking northward from the intersection of Parkside Avenue and Division Street in Chicago on the evening of July 21, 1980, after purchasing some wine when they encountered a male pedestrian walking toward them. Jones testified that when they observed the same man a few minutes later walking on his return trip past them on the other side of the street, defendant said he needed some money; ran across the street toward the man; told the man, "Stickup, don't run"; and then ran after the man and shot him in the back after the man began to run. Jones testified that defendant then approached the fallen man and began to search him and that, when defendant rejoined Jones and Godsey later, defendant said that he had shot the man because he had run despite being warned, although defendant added that he had obtained no money from the man.

Police officer Johnace Lewis then testified to having found the victim's body and that it had no identification on it but that $12 in a shirt pocket and a gold chain were on the body when she found it. She added that, when found, the body was lying on its back.

Dr. Edmund Donoghue of the Cook County medical examiner's office testified that the victim died of a gunshot wound to the left buttocks that involved the bowel and heart. Donoghue also testified that the victim's chin showed abrasions consistent with falling onto a hard surface and that, after receiving such a wound and falling on his face, a person could have turned himself over.

Mario Godsey, a neighbor of defendant, then testified. His account of the wine purchase, walk along Parkside Avenue, and encounter with the victim generally paralleled Jones'. He also stated that, at the time of his testimony, he was in jail awaiting sentencing on an automobile theft charge; that he had made an arrangement that if he would testify in defendant's case the State would recommend a two-year sentence on his theft charge; and that the judge in his theft case had told him that he was eligible for an extended 10-year term of imprisonment.

Assistant State's Attorney Michael Markovitz testified as to a statement that he said defendant had given him. In the statement attributed to defendant, he was quoted as having told of seizing a gun from Jones to prevent Jones from using it in robbing the victim, whereupon as defendant approached the victim, who was across the street, the gun somehow discharged after someone yelled from a nearby porch. Assistant State's Attorney Chris Cronson then testified as to defendant's having signed the statement.

Defendant did not testify and called only one witness, the owner of a store equivocally identified by Jones as the place where the wine had been bought. The store owner testified that he never sold liquor although there was a liquor store three or four doors from his establishment.

At an instructions conference, defense counsel tendered an "innocent hypothesis" instruction, which was refused. Thereupon, counsel made their closing arguments, and after being instructed on the law, the jury found defendant guilty.

Sentencing took place on May 9, 1985. After defendant's motion for a new trial was denied, this appeal followed.

## OPINION

### I. *VOIR DIRE*

Defendant contends that, by failing to ask three supplemental questions that the defense had submitted for *voir dire* of the potential jurors, the trial court committed reversible error. In support, defendant cites *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. The State responds that defendant waived this ground for review by failing to object at trial or to raise it in his post-trial motion and that in any event the trial court fully complied with the *Zehr* requirements.

The three questions at issue were:

"1. If at the close of all the evidence and after you have heard arguments of counsel you believe that the state has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of not guilty?

2. If the defendant, KENT STARKS, decides not to testify in his own behalf, would you hold it against him?

3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the state?"

As to the first question, the trial judge stated: "Number 1 I always ask." As to the second and third questions, the judge stated: "I instruct them as far as Number 2 is concerned. I instruct them as to Number 3." After the judge's responses as to five other questions that the defense had tendered, this exchange occurred:

"MR. CONNORS [Defense Counsel]: You are not going to ask Number 6 and 7, but you are going to ask Numbers—

THE COURT: Everything else. Everything else basically I ask.

MR. CONNORS: Would you ask some questions similar to 6 and 7?

THE COURT: I always ask questions about what clubs, organizations they belong to, what newspapers and magazines they read.

MR. CONNORS: I think that it is about it right now."

Shortly thereafter, this dialogue between defense counsel and the trial judge occurred:

"[MR. CONNORS, Defense Counsel:] Secondly, I would like to file with the Court my request for supplemental voir dire questions, and to have these questions.

THE COURT: We have already—

MR. CONNORS: I want to keep it part of the record in this case.

THE COURT: Sure."

During his preliminary remarks to the assembly of sworn prospective jurors, the trial judge advised them that they must follow the law as he stated it to them, that the defendant is presumed innocent until or unless the State proves him guilty beyond a reasonable doubt, that the defendant need not prove anything, and that the burden is on the State to prove him guilty beyond a reasonable doubt. The judge then asked the prospective jurors whether

"anything about the nature of the charges here, the defendant is charged with the offense of attempt armed robbery and murder, is there anything about that that starts any juror out one way or another, or you feel you could not give both sides a fair trial? It is not whether you like the armed robbery or murder. None of us do. But merely because the charges are as I have stated, does that start off anyone one way or the other in that you could not give both sides a fair trial? Anybody? Nobody."

Thereafter, as 32 prospective jurors were examined individually by the trial judge, he asked only five of them any questions that even touched on the subject matter of the three tendered *voir dire* questions now at issue. Of the five prospective jurors, only two were impaneled.

When one prospective juror acknowledged that he had previously been a juror in a civil case, the judge told him that the burden of proof in a criminal case is different in that the State must prove the defendant guilty beyond a reasonable doubt; the judge then asked the venireman whether he would forget anything he might have learned

during the civil case, the venireman answered yes, and he was later impaneled. Another prospective juror with police officers as friends was asked whether, if the State failed to prove guilt beyond a reasonable doubt, she would have any hesitancy in returning a not guilty verdict because she would have to tell a police officer about it; she answered no but was later excused from serving.

After individually examining the first 14 prospective jurors, the trial judge asked them as a group:

> "Is there anything on the mind of any of the fourteen of you that you wish to bring out at this time that you feel could affect your ability here to give both sides a fair trial?
>
> Nothing."

Thereafter, a prospective juror who had previously served in a civil case was asked whether he would forget any law he had learned then, he answered yes, and he was later impaneled. The judge then asked the next group of four prospective jurors the earlier question regarding anything on their minds that might affect their ability to give the parties a fair trial; no one answered yes. Subsequent groups of six, four, and two, respectively, were each asked a similar question with similar results.

A prospective juror who declared herself "against people with crimes" was advised by the judge as follows: "That is what the issue is. The defendant is presumed to be innocent of the charges against him, do you understand that?" After an indecisive reply, the judge excused her. Another prospective juror whose father was a police officer was asked by the judge whether, if the State should fail to prove its case beyond a reasonable doubt, he would hesitate to return a not guilty verdict because he would have to explain it to his father; he answered no but was later excused.

Before retiring to deliberate, the jurors were instructed that defendant was presumed innocent and that the presumption could be overcome only if from all the evidence they believed beyond a reasonable doubt that he was guilty; that the State had the burden of proof beyond a reasonable doubt; that defendant was not required to prove his innocence; and that the fact that he did not testify should not be considered by them.

Thus, while instructions at the end of trial covered the legal subject matter of the three *voir dire* questions at issue, no preimpanelment question posed to prospective jurors individually or as a group tested them specifically as to their attitude toward defendant's failure to testify. Only two prospective jurors (both later excused) were individually questioned at all regarding hesitancy to acquit if guilt re-

mained unproved beyond a reasonable doubt, even though the trial judge had stated beforehand that he always asked such a question. Only one prospective juror (later excused) was individually questioned as to understanding the presumption of innocence.

As a group, members of the venire were merely asked whether they were willing to follow the law as the judge would later announce it and whether anything on their minds might prevent them from giving the parties a fair trial. They were also advised before impanelment as to the presumption of innocence, the State's burden of proof, and defendant's lack of need to present evidence—but not as to the impropriety of drawing inferences from defendant's failure to testify.

■ Though the State contends that defendant waived his *voir dire* contention by failure to object or to raise it in his post-trial motion, the record discloses that in fact it was included in the post-trial motion. Moreover, defense counsel specifically requested that the trial judge ask the tendered supplemental questions on *voir dire* and was refused as to the second and third questions; he then filed his questions for the record. His so doing amounted to a motion; the refusal, to a partial denial of the motion. Accordingly, defendant did not waive this contention as to the second and third questions (regarding inferences from defendant's failure to testify and his presumption of innocence).

As to the first question (regarding hesitancy to return a not guilty verdict), the trial judge stated that he always asked it, but he then failed to do so except in modified form, and then only as to a few jurors; yet, defendant raised no objection at trial to this failure. In similar circumstances, we have held that, despite the requirements of *People v. Zehr*, failure to object waived the issue. Where there was "overwhelming evidence" of defendant's guilt, no plain error was found that would vitiate the waiver. *People v. Visnack* (1985), 135 Ill. App. 3d 113, 124, 481 N.E.2d 744, 751, *appeal denied* (1985), 111 Ill. 2d 563; see also *People v. Kokoraleis* (1987), 154 Ill. App. 3d 519, 525, 507 N.E.2d 146, 149, *appeal denied* (1987), 116 Ill. 2d 569.

In the present case, despite the implausibility of some critical exculpatory parts of the statement attributed to defendant and the corroboration that other parts of it afforded to his companions' testimony, it is arguable whether the evidence against defendant was "overwhelming" as in *Visnack*, given the witness Godsey's possible bias as a plea-bargaining theft defendant and the fact that defendant's statement to the police did implicate Jones rather than defendant. However, we need not decide whether to invoke the plain-error doctrine (107 Ill. 2d R. 615(a)) on the ground that, as in the case cited

by the State itself, "we cannot with certainty conclude in this case that the verdict would not have changed even if the tendered question[ ] had been asked on *voir dire*" (*People v. Stack* (1984), 128 Ill. App. 3d 611, 617, 470 N.E.2d 1252, 1257, *affirmed in part and remanded* (1986), 112 Ill. 2d 301, 493 N.E.2d 339, *cert. denied* (1986), 479 U.S. 870, 93 L. Ed. 2d 162, 107 S. Ct. 236; but *cf. People v. Pitts* (1982), 104 Ill. App. 3d 451, 432 N.E.2d 1062 (harmless error)). We are relieved from having to decide the plain-error issue because defendant has in any case preserved his contentions as to the second and third questions he tendered. The substance of his contentions is thus before us and furnishes an adequate basis for our holding, irrespective of whether he arguably waived his contentions as to the first tendered question.

In *Zehr*, the court considered *voir dire* questions virtually identical to those submitted by the present defendant. The supreme court agreed with the appellate court that "*[e]ach* of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury." (Emphasis added.) (*Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064, quoting from *People v. Zehr* (1982), 110 Ill. App. 3d 458, 461, 442 N.E.2d 581, 584.) It is

> "essential to the qualification of jurors in a criminal case *** that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect. It is also vital to the selection of a fair and impartial jury that a juror who finds that the State has failed to sustain its burden of proof of guilt beyond a reasonable doubt have no prejudices against returning a verdict of not guilty." (*Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.)

Although the questions at issue "need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on *voir dire*." (*Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064; see also *People v. Emerson* (1987), 122 Ill. 2d 411, 426 (no "precise formula").) Accordingly, the *Zehr* court found prejudicial and reversible error. See also *People v. Thompkins* (1988), 121 Ill. 2d 401, 438 (defendant was entitled to have venire asked question his counsel tendered, though court rejected contention that trial judge's *voir dire* statement commented adversely on failure to testify).

■ The State argues that in the present case the trial judge admonished the venire as to presumption of innocence, defendant's right not to present proof, and the State's burden of proof, and that the jury was instructed on the same subjects. The State cites *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137, *appeal denied* (1985), 101 Ill. 2d 591, in support. However, *Zehr* teaches that admonitions and instructions are no substitute for interrogation. Furthermore, in *Leamons* the trial judge asked the venire panels on 12 occasions whether they disagreed with the principles of law that he had stated. The judge had stated that the defendant need prove nothing, need not present evidence, and could rely simply on the presumption of innocence. The judge had also stated that if the venire were not convinced beyond a reasonable doubt of defendant's guilt, they must acquit him. In those circumstances, the court found that the three *Zehr* concerns were sufficiently broached to alleviate any possible error. *Leamons*, 127 Ill. App. 3d at 1064-66, 469 N.E.2d at 1143-44.

In the case at bar, no such comprehensive question as in *Leamons* regarding disagreement with stated principles was put to the venire as a group; only parts of the three *Zehr* concerns were raised in the form of questions to a few of the venire members; and no venire member was asked about attitudes toward a defendant who failed to testify. Thus, *Leamons* fails to shelter such a failure to probe the venire as in the instant case.

In addition, two more recent cases demonstrate the inadequacy of the trial judge's interrogation in the case at bar. In *People v. Boswell* (1985), 132 Ill. App. 3d 52, 476 N.E.2d 1154, *rev'd on other grounds* (1986), 111 Ill. 2d 571, 488 N.E.2d 273, though it would have been enough for the trial judge to make a full statement of applicable principles followed by questions of the venire *en masse* as to their willingness to follow the law even if they disagreed, the judge failed to address and question the venire as to defendant's right not to testify; therefore, *Zehr* was not fully complied with. (*Boswell*, 132 Ill. App. 3d at 56, 476 N.E.2d at 1157-58.) And in *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015, *rev'd on other grounds* (1986), 112 Ill. 2d 567, 513 N.E.2d 844, the trial judge refused to question the venire as to attitudes toward defendant's failure to testify, even though he admonished them that the defendant need not prove anything and then questioned them as to whether they understood the principle and whether they would follow the law he would give them at the end of trial. Citing *Boswell*, the appellate court held that the trial judge had not complied with the *Zehr* requirements. *Wilson*, 139 Ill. App. 3d at

737, 487 N.E.2d at 1023-24; see also *People v. Stewart* (1986), 143 Ill. App. 3d 933, 936, 494 N.E.2d 1171, 1173 (question necessary regarding defendant's failure to offer evidence); *People v. Wilson* (1986), 141 Ill. App. 3d 388, 389-91, 490 N.E.2d 177, 179 (three *Zehr* questions should be covered; *Leamons* distinguished); *People v. McMullin* (1985), 138 Ill. App. 3d 872, 878-79, 486 N.E.2d 412, 417 (*Zehr* questions are required); *People v. Estes* (1984), 127 Ill. App. 3d 642, 655, 469 N.E.2d 275, 285, *appeal denied* (1984), 101 Ill. 2d 584 (*Zehr* questions are required).

We have recently noted the supreme court's statement (*Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064; accord *People v. Emerson* (1987), 122 Ill. 2d 411, 425-27) that, although the subject matter of the questions at issue should be covered during venire interrogation, the questions need not be asked in precisely the form submitted. (*People v. Cole* (1988), 168 Ill. App. 3d 172, 183.) However, in the *Cole* case, though he did not pose the tendered questions, the trial judge did specifically advise the venire members as a group that "[t]he law does not require the defendant to prove his innocence," immediately after which he asked whether any of them disagreed with that legal proposition and then repeated that their silence signified their agreement with it. (*Cole*, 168 Ill. App. 3d at 175.) On appeal, the defendant contended that the judge should have asked the exact questions his counsel had tendered, and in light of *Zehr* we rejected that contention. We also observed that the trial judge had given the venire members an opportunity to indicate whether they would fail to adhere to the cardinal rules of law represented by the proposed questions' subject matter and that the judge had properly used his discretion in so broaching the subject matter to the venire. *Cole*, 168 Ill. App. 3d at 183.

By contrast to *Cole*, the judge in the present case, after making a statement that generally covered most of the subject matter of the three tendered questions, merely asked the prospective jurors whether "anything now about the nature of the charges" would prevent them from giving the parties a fair trial. Much later, he simply asked the venire members in groups whether anything on their minds might impede a fair trial. Only two of the ultimately impaneled jurors were ever asked questions that even obliquely related to the critical subject matter, and no prospective juror was ever asked specifically about attitudes toward defendant's failure to testify. Moreover, though the judge did tell venire members as a group that defendant need not prove anything, he did not specifically tell them that this meant that defendant could fail to testify altogether without being subject to adverse inferences. Such questions or advice would have gone "to the

heart" of a particular bias potentially evoked by defendant's trial strategy. And, even if the judge had specifically advised the venire members that no adverse inference should be drawn from defendant's failure to testify, the absence of any ensuing inquiry as to their willingness to abide by that rule would not have constituted the requisite interrogation on the subject. See *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

This case is also different from *People v. Emerson* (1987), 122 Ill. 2d 411, where the critical issue was the presumption of innocence and where the trial judge first secured the venire's agreement that it would follow the law as he stated it and then discussed with the venire a hypothetical situation in which, if the jurors immediately now retired, they should find the defendant not guilty because they would have heard no evidence to overcome the presumption. The *Emerson* inquiry, subsequent discussion, and second inquiry were sufficient *Zehr* compliance. (*Emerson*, 122 Ill. 2d at 425-27.) Here, however, the trial judge not only failed to discuss with the venire at any length the subject matter of the first and third questions tendered by defendant, but he failed even to bring to the venire's attention the subject matter of the second question with regard to whether venire members would hold it against defendant if he failed to testify.

Likewise, this case differs from *People v. Hopkins* (1987), 160 Ill. App. 3d 967, 513 N.E.2d 1011, *appeal denied* (1987), 117 Ill. 2d 548, in which the trial judge individually discussed with three venire members, in front of all the others, the fact that the defendant did not have to testify. The *Hopkins* trial court substantially complied with *Zehr* by its initial emphasis on the State's burden and the defendant's presumption, by its discussion with the three venire members, and by its later instruction that the jury should not consider defendant's failure to testify. (*Hopkins*, 160 Ill. App. 3d at 971-72, 513 N.E.2d at 1014-15.) In the case at bar, whether or not the trial court laid similar emphasis on the State's burden and defendant's presumption, it clearly never dealt at all during *voir dire* with the impropriety of drawing adverse inferences from defendant's failure to testify.

It is true, as we noted in *People v. Williams* (1987), 159 Ill. App. 3d 527, 532, 512 N.E.2d 35, 38, that "a trial judge need not turn the process of selecting a jury into a catechetical exercise." A trial judge retains discretion to determine how to cover during *voir dire* the *Zehr*-identified basic rights of a defendant. (See *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064, *Williams*, 159 Ill. App. 3d at 532, 512 N.E.2d at 38.) Nevertheless, the questions at issue in the case at bar were almost exactly the very questions addressed in *Zehr*, and, dis-

similarly from *Williams*, all their subject matter was not covered either by the judge's statement or by his subsequent inquiries of the venire. By way of further contrast, the questions at issue in *Williams* numbered eight and were somewhat partial and repetitive, whereas the three questions in the case at bar were concisely comprehensive of factors that are "essential to the qualification of jurors in a criminal case." *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

This case also differs from *People v. Poole* (1988), 167 Ill. App. 3d 7, in which the trial judge declined to ask two proffered *voir dire* questions on the defendant's right to a presumption of innocence but then apprised the venire of that right and asked each prospective juror whether there were any reasons that the juror could not be fair. (*Poole*, 167 Ill. App. 3d at 10.) Though we held that the *Zehr* doctrine did not apply retroactively to *Poole*, we also concluded that, even if it did apply, the trial judge had satisfied the doctrine's requirements by discussing the presumption of innocence and then promptly asking venire members whether they could apply the law fairly as it had been explained to them. (*Poole*, 167 Ill. App. 3d at 11-13.) In the case now at bar, the trial judge's preliminary statement to the venire omitted the fact that defendant could fail to testify without generating an adverse inference, and thus the statement did not cover all the contents of the tendered questions. Furthermore, the judge's subsequent mass interrogation of the venire merely asked the members whether anything about the nature of the murder and attempted-armed-robbery charges or anything on their minds would prevent them from being fair, while his individual interrogations only occasionally touched on the subject matter of the questions and never on the critical point of not drawing adverse inferences from defendant's failure to testify.

■ In the circumstances of this case, we therefore hold that the trial court committed prejudicial and reversible error in failing either to pose to the venire on *voir dire* the three tendered questions now at issue or otherwise to broach their subject matter sufficiently and secure the venire members' response thereto. See *People v. Thompkins* (1988), 121 Ill. 2d 401, 438; *People v. Zehr* (1984), 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064.

## II. OTHER ISSUES

Because of our disposition of this appeal, we need not reach other issues raised by defendant. However, two of them conceivably could arise again on retrial, and we therefore address them briefly.

Defendant contends that certain remarks of the prosecutor during closing argument improperly commented on his failure to testify.

From our examination of the record, we conclude that the State could have drawn attention to the lack of a wallet on the victim's body without, as it did, also drawing attention to the defendant's failure to testify about that subject or others. The fact and significance of the wallet's absence in no way depended on defendant's testimony for establishment; hence, reference to defendant's silence was wholly unnecessary in order to draw the inference that a wallet had existed or to rebut the implication that it had not existed. The prosecution is not permitted to comment directly or indirectly on a defendant's failure to take the stand, even though the prosecution may describe the State's evidence as uncontradicted as long as doing so is not intended or calculated to direct the jury's attention to defendant's failure to testify. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297.) Given the strong constitutional, legislative, and judicial policy against comments on a criminal defendant's failure to testify, in any retrial at which defendant may likewise fail to testify the State should scrupulously avoid all such comments or insinuations. See, *e.g.*, Ill. Rev. Stat. 1985, ch. 38, par. 155—1; *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Bean* (1985), 109 Ill. 2d 80, 97-100, 485 N.E.2d 349, 357-59; *People v. Burton* (1969), 44 Ill. 2d 53, 56-57, 254 N.E.2d 527, 528-29; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 487-88, 229 N.E.2d 490, 494-95; *People v. Morgan* (1960), 20 Ill. 2d 437, 441, 170 N.E.2d 529, 530-31; *cf. People v. Bolden* (1987), 152 Ill. App. 3d 631, 639, 504 N.E.2d 835, 841-42.

In the face of such a clear obligation on the State's part, the contention that objectionable comment was invited by defense counsel's own argument cannot prevail. Such an invitation can be accepted when doing so is not for the purpose of calling attention to defendant's silence (see *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297; *People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180, 182-83), but the "invited error" concept does not, however, "go so far as to insulate any related remarks the prosecutor may choose to make" (*People v. Burke* (1985), 136 Ill. App. 3d 593, 604, 483 N.E.2d 674, 683, *appeal denied* (1985), 111 Ill. 2d 557). See also *United States v. Young* (1985), 470 U.S. 1, 12-13, 84 L. Ed. 2d 1, 10-11, 105 S. Ct. 1038, 1045 ("invited response" rule limited to instances of impropriety in initial argument and still requires an assessment of whether defendant was prejudiced by the response; rule should be construed so as not to encourage prosecutors to think it gives "license to make otherwise improper argument").

Defendant also contends that failure to give an "innocent hypothesis" instruction was error when the "same facts"—defendant's al-

leged statement to police—were susceptible of both an innocent and a guilty construction. Defendant argues that the statement demonstrated his innocence but that the State was arguing that it was a confession of murder. However, from a review of the record, it is apparent that the State's argument rested on the condition that the jury disbelieve the purely exculpatory parts of the statement as to intent and motive, so that the remainder might serve to corroborate the entirety of defendant's participation in the shooting. Thus, the "same facts" were not involved as they were in *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827, cited by defendant, and the instruction was not required. See *People v. DeHoyos* (1975), 31 Ill. App. 3d 12, 19-20, 332 N.E.2d 643, 649, *aff'd* (1976), 64 Ill. 2d 128, 355 N.E.2d 19; *People v. Cannon* (1975), 25 Ill. App. 3d 737, 746, 323 N.E.2d 846, 852-53; *People v. Decker* (1974), 19 Ill. App. 3d 86, 97-98, 311 N.E.2d 228, 236-37, *appeal denied* (1974), 56 Ill. 2d 588.

In view of the foregoing, we reverse the judgment and sentence of the trial court and remand this cause to the circuit court of Cook County for a new trial.

Reversed and remanded.

HARTMAN, P.J., and SCARIANO, J., concur.