THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES LINDGREN (Impleaded), Defendant-Appellant.

Fourth District   No. 14891

Opinion filed January 9, 1979.—Modified on denial of rehearing March 8, 1979.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Ken Boyle, State's Attorney, of Carlinville (Robert C. Perry and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On May 12, 1977, the defendant was charged by information with three counts of murder (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1(a)(1), (2), (3)), one count of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), and one count of robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1), as the result of conduct alleged to have occurred on April 18, 1977. Following jury trial, defendant was found guilty of each offense. Defendant was sentenced to a term of 85 to 135 years for murder, 25 to 75 years for armed robbery, and 6 to 18 years for robbery, all sentences to be served concurrently.

On appeal, defendant essentially contends (1) that his conviction for robbery must be reversed as it is a lesser included offense of armed robbery, (2) that he was denied a fair trial as the result of the introduction of evidence concerning an unrelated crime allegedly committed by the defendant, and (3) that the prejudicial nature of certain photographs of the victim introduced into evidence outweighed their probative value so as to require a new trial. Defendant has raised additional issues in this appeal which, in view of the disposition being made, we need not consider.

A brief summary of the testimony is necessary to an understanding of the case. The principal witness for the State was co-defendant Ina Lewis, 18 years old, granddaughter of the victim and girlfriend of the defendant. Lewis testified that on April 17, 1977, she and the defendant returned to Virden, Illinois, around 8:30 or 9:30 p.m. after having spent most of the day together. The defendant left Lewis at her mother's house and did not tell her where he was going. Lewis, while asleep at her mother's house, was awakened between 12:30 and 1:30 a.m. by the sound of an automobile horn. After going outside, she saw the defendant sitting in his car crying and covered with blood. He told her that he had just killed her grandfather, Arthur Lewis. The defendant then insisted that she accompany him to her grandfather's house to search for money. Inside the car, Lewis noticed a tire tool lying on the front seat.

After driving Lewis to her grandfather's house, the defendant forced her to go inside where she observed the severely lacerated body of her grandfather lying on the floor. While Lewis stood in the hallway, the defendant searched the house for money but found none.

After returning to the defendant's car, the defendant told Lewis that he was going to his ex-wife's house to burn it down. The defendant told

Lewis that he knew his ex-wife was not at home because he had seen her earlier in a tavern at Virden. When they arrived, the defendant made Lewis go inside with him. The defendant set fire to a blanket and threw it on the living room couch. As they were leaving, Lewis could see the blaze through a window in the house.

After leaving, the defendant's car became stuck in a ditch on a country road. Lewis and the defendant were given a ride by a passing motorist and eventually arrived at the home of Lewis' grandmother, Alice Beckam, at approximately 3 or 3:30 a.m. The defendant had Lewis burn the clothes that he was wearing and a wallet belonging to the decedent. Lewis then scrubbed the defendant's brown leather boots while he washed his hands and chest in the kitchen sink. The defendant counted money totaling over $300 which he told Lewis he had taken from the victim's wallet.

Lewis testified that she and the defendant fell asleep and awakened at approximately 6:30 a.m. Thereafter her mother arrived and drove them to a service station to obtain a tow truck to pull the defendant's car out of the ditch. While they were waiting for the tow truck, police arrived and arrested the defendant.

Evidence of an autopsy of the decedent's body revealed lacerations and fractures along the left side of the head which were several inches long and started from above the left ear and extended to the base of the skull. The lacerations severed the blood vessels in the head causing internal bleeding around the brain. In addition, three ribs were fractured puncturing the left lung, permitting blood to enter into the lung and occasioning its partial collapse. There were long lacerations on the legs and lower abdomen. The decedent's genitals had been amputated and were recovered from his mouth. According to the pathologist, death resulted from injuries to the decedent's head. By his calculations, the time of death was between 1 and 5 a.m. on April 18, 1977, and was caused by a blunt, black instrument.

■■ We agree with defendant's first contention that his conviction for robbery must be reversed since that offense arose from the same act as did the offense of armed robbery for which he was also convicted. Robbery is an included offense of armed robbery. (*People v. Washington* (1971), 132 Ill. App. 2d 616, 622-23, 270 N.E.2d 436.) It is clear that a defendant may not be convicted of both the principal and lesser included offenses, even where concurrent sentences are imposed. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

■ The defendant secondly contends that testimony that he had set fire to his ex-wife's home was introduced solely for the purpose of showing his propensity to commit crimes and had no probative value to support the offenses charged and resulted in substantial prejudice. It is well

established that evidence of crimes other than the one for which the accused is being tried is not generally admissible. Exceptions to this rule exist, however, when the evidence is introduced to show motive, intent, identity, absence of mistake, *modus operandi,* or any other relevant purpose other than to show the defendant's propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) Evidence of another crime relevant to establish one of the exceptions to the general rule will still be excluded or stricken when its probative value is outweighed by its prejudicial impact upon the defendant. *People v. Cage* (1966), 34 Ill. 2d 530, 534, 216 N.E.2d 805.

The State first asserts that evidence of the arson was admissible because it demonstrated the defendant's consciousness of guilt for the murder and armed robbery. Relying on the rationale of this court in *People v. Smith* (1972), 3 Ill. App. 3d 958, 279 N.E.2d 512, the State contends that the underlying motivation for the arson was to conceal the fact that the defendant had taken a gun from the residence which the State alleges, without substantiation, was used in the armed robbery. We regard this theory as being without merit in view of the testimony by the State's own witness, Ina Lewis. She testified that the defendant said he had told his ex-wife that he would burn down her house if she did not return home that evening.

The State next asserts that evidence of the arson is admissible in order to place the defendant in close proximity to the time and place of the offenses for which he is charged, thereby negating an alibi defense. The State cites *People v. Bolton* (1976), 35 Ill. App. 3d 965, 343 N.E.2d 190, where evidence of a subsequent shooting incident was received for the purpose of contradicting the defendant's alibi by showing his presence in the vicinity the day after the occurrence of the crime for which he was charged. The evidence presented in *Bolton* was a ballistics test which showed that the gun the defendant used to shoot the victim was the same gun used in a subsequent shooting. Unlike the present case, there was no witness in *Bolton* who could establish the defendant's proximity to the crime charged without giving a detailed account of another crime. Lewis' other testimony in the present case sufficiently placed the defendant in close proximity to the time and place of the offenses for which he was charged, and any testimony by her concerning the arson was only duplicative of her other testimony.

The State further argues in support of the admissibility of the testimony by Lewis regarding the arson that it was part of a continuing narrative of events surrounding the death of the victim. We do not agree. While it may be true that the defendant commenced a course of illegal conduct during the night of April 17, 1977, the arson of Mary Ann Lindgren's home cannot be considered part of one transaction, but rather

constitutes a distinct and disconnected crime having no relevance to the commission of the other offenses. We conclude that any evidence concerning the arson should have been excluded.

Over defendant's objections, People's exhibits Nos. 41, 42, and 45 were admitted into evidence and distributed to the jury. People's exhibit No. 41 is a color photograph taken of the victim's body in his home shortly after it was discovered by his son. People's exhibit No. 42 is a black and white photograph taken at approximately the same time but showing a different angle of the body. People's exhibit No. 45 is a color photograph of the victim's head and a portion of his chest after his genitals had been removed from his mouth and the excess blood washed from his face.

The photographs were introduced into evidence ostensibly to corroborate the testimony of several witnesses who had testified as to the condition of the victim's body as it was found in his home. No issue was raised at trial, however, as to the identity of the victim, the cause of death, or the nature of the wounds inflicted upon the victim. Defendant asserts that the photographs could serve no purpose other than to inflame and prejudice the jury since there was sufficient evidence to establish the condition of the victim's body and the cause of death.

■■ It is quite clear that the admission of photographs of the victim of a murder is a matter reserved to the sound discretion of the trial judge. (*People v. Myers* (1966), 35 Ill. 2d 311, 331, 220 N.E.2d 297, 309, *cert. denied* (1967), 385 U.S. 1019, 17 L. Ed. 2d 557, 87 S. Ct. 752.) A photograph is admissible even though it has a gruesome nature where it is relevant and established some fact in issue. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 13-14, 302 N.E.2d 27, 31-32.) Photographs have been deemed admissible when relevant to determine the victim's identity (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 514, 359 N.E.2d 1178), to corroborate evidence concerning an unusual cause of death (*People v. Newbury* (1972), 53 Ill. 2d 228, 242, 290 N.E.2d 592, 600), or to assist the jury in understanding medical testimony concerning the cause of death. *People v. Owens* (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465, 469, *cert. denied* (1977), 430 U.S. 955, 51 L. Ed. 2d 805, 97 S. Ct. 1600.

In *People v. Jones* (1978), 62 Ill. App. 3d 443, 379 N.E.2d 301, this court stated that a photograph is not necessarily cumulative in nature merely because it graphically illustrates the oral testimony of live witnesses. In *Jones*, the photograph objected to by the defendant was an 8″ x 10″, black and white photograph of the victim's upper body as it rested at the scene of the crime, after the victim had been rolled onto his back by a crime scene technician. The photograph clearly displayed the part of the victim's head which was blown away by the point-blank blast of a shotgun. This court held that the photograph, although gruesome,

was properly admissible since it clearly corroborated the testimony of a pathologist as to the cause of death, and also corroborated the testimony of a number of other witnesses who testified in regard to the physical appearance and clothing of the victim just prior to his abduction.

■■ In the instant case, the State contends that the photographs were probative of the cause of death. The pathologist testified that death was the result of injuries to the head. We cannot say that People's exhibit No. 45, a color photograph of the victim's head and a portion of his chest, is not somewhat probative of the cause of death and useful in corroborating and explaining the pathologist's testimony. However, People's exhibits Nos. 41 and 42, full length photographs of the victim at the scene of the crime, have no additional probative value as to the cause of death because of the distance from which they were taken and because of the inability of jurors to discern details that would aid in determining the cause of death.

■■ The State alternatively contends that from these photographs, a jury would be able to determine the use of force and the number and location of wounds on the victim's body. It is obvious from the photographs that when referring to the use of force and the number and location of wounds on the victim's body, the State is referring to the genital amputation and the extensive lacerations to the victim's legs. The pathologist gave extensive oral testimony as to the nature of the victim's wounds, noting that the amputation and the incised wounds below the waist were inflicted after death had occurred. Consequently, People's exhibits Nos. 41 and 42 had little or no probative value for the purposes intended and, given their particularly offensive and gruesome nature, served only to inflame the passions of the jury. Under the facts of this case, we conclude that People's exhibits Nos. 41 and 42 are so prejudicial and inflammatory as to overcome and outweigh any possible probative value they may have had at the trial.

■■■ For the foregoing reasons, we find that substantial prejudice to the defendant has occurred requiring that his convictions of murder and armed robbery be reversed and the cause is remanded for a new trial. Pursuant of our authority under Supreme Court Rule 615(b) (58 Ill. 2d R. 615(b)), defendant's conviction for robbery is vacated.

Reversed and remanded with directions.

CRAVEN and TRAPP, JJ., concur.