**UNITED STATES of America ex rel.
Alfredo GONZALEZ, Petitioner,**

v.

**George DeTELLA, Defendant.**

No. 95 C 4180.

United States District Court,
N.D. Illinois,
Eastern Division.

March 1, 1996.

Frederick F. Cohn, Chicago, IL, for Gonzalez.

Arleen C. Anderson, Attorney General's Office, Chicago, IL, for DeTella.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Petitioner Alfredo Gonzalez (Gonzalez) was convicted by a jury in an Illinois state court of the murders of Kevin and Torrence Wiley and sentenced to life in prison. He has filed this petition for writ of *habeas corpus* under 28 U.S.C. § 2254. Gonzalez contends that his conviction was improper because he was denied due process of law and effective assistance of counsel at trial. The state responds that Gonzalez's petition is insufficient on the merits to warrant *habeas* relief. For the

reasons set forth below, the petition is denied.

### FACTS[1]

In the early morning hours of May 25, 1990, Chicago police responded to a call at the corner of Kimball and North Avenues. When they arrived, they found Kevin and Torrence Wiley, 26 and 27 years-old respectively, on the ground bleeding profusely from various severe wounds to the chest, head and mid-section. Both men died before paramedics arrived. At trial, the state's medical and ballistic experts testified that the Wiley brothers were killed by bullets fired at close range by a single 9 millimeter gun. Photographs taken by an evidence technician at the scene, including closeups of the victims' uncleaned wounds, were admitted into evidence over the objections of petitioner's trial counsel.

Testimony regarding Gonzalez's involvement in the murders was provided chiefly by two witnesses: Rosa Bello (Bello) and Justino Cruz (Cruz), both of whom initially provided information to the police and agreed to testify against Gonzalez with apparent hesitation. Bello did not come forward with any information about the crimes until August 1990, when her boyfriend, Jose Maysonet (Maysonet), was arrested and charged with their commission—over three months after the murders were committed. Although she agreed to testify against petitioner, she refused to testify in Maysonet's trial.

Bello testified that on the night of May 24, 1990, Gonzalez, Cruz and a man she knew only as "Fro" arrived at her home and asked to speak to Maysonet, who lived with her at the time. She testified that although she did not overhear the conversation between the four men, all of whom she identified as members of the street gang known as the Latin Kings, Maysonet asked her before too long to retrieve a package from the bedroom. Bello testified that when she gave the package to petitioner he unwrapped it and she saw that it contained a gun. She testified that she

then saw Gonzalez put bullets into a clip, load the clip into the gun, rewrap the gun in a towel and a plastic bag, and stick the entire package under his black hooded shirt ("hoodie") at the waist. Finally, Bello testified that prior to her testimony she had been staying at a hotel for several days at the expense of the state's attorney's office because someone allegedly had tried to run her and her son over with a car.

The state charged Cruz with the murders of the Wiley brothers in August 1990, at which time Cruz gave a statement that was summarized in writing by an assistant state's attorney. Fifteen months later Cruz testified that the state approached him regarding a plea agreement for his truthful testimony against Gonzalez. He stated that he did not agree to testify against petitioner until the state agreed to recommend a 22-year sentence in return for his testimony and his plea of guilty to one of the murders. On cross examination, Cruz indicated that he was aware of the possibility that he might receive day-for-day credit for time served and that "good time" might be deducted from any sentence he would receive under his plea agreement.

Cruz's testimony encompassed events that occurred just prior to his, Gonzalez's and Fro's arrival at Bello's apartment, the period of time spent in the apartment, and the hour or so after the three men left the apartment with Maysonet and engaged in the actions which Cruz claimed led to the murders. At around 11 p.m. of May 24, Cruz testified that Gonzalez and "Fro," whom Cruz identified as Chris Hernandez, stopped their vehicle to speak with him as he walked toward his girlfriend's home. According to Cruz, when he got into the vehicle with the other men, Gonzalez stated that he and Hernandez were going "to Juan's house to get a gun," and Hernandez indicated that they needed the gun to "do a drug sale." As to the events that took place once they got to Bello's apartment, Cruz largely corroborated Bello's testi-

---

1. Under 28 U.S.C. § 2254(d), the facts set forth in the Illinois Appellate Court's opinion are presumed to be correct. *See Sumner v. Mata*, 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); *Smith v. Fairman*, 862 F.2d 630, 632 (7th Cir.1988), *cert. denied*, 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989). We rely on that opinion for our recital of events leading to Gonzalez's arrest and conviction.

mony, including identifying the weapon that Gonzalez put under his hoodie as a 9 millimeter gun. He also confirmed that he and the other three men involved in these events were Latin Kings, and that Gonzalez is his uncle.

According to Cruz, after leaving Bello's apartment, the four men drove to an empty lot near North and Kimball Avenues, where Maysonet parked the car and Gonzalez and Hernandez got out and walked toward the corner. In a statement taken by an assistant state's attorney in August 1990, Cruz indicated that after parking the car, all four men had "hooded up, meaning they put the hoods from their sweatshirts on their heads." Cruz testified that he saw two African–American men standing at the corner as petitioner and Hernandez approached. After Gonzalez and Hernandez conversed with these men for approximately five or ten minutes, Cruz testified that he heard between four and six gunshots fired in rapid succession. Immediately thereafter, Cruz stated that he saw Hernandez and petitioner running back toward the car. He also testified that he saw one of the men with whom they had been conversing on the ground. According to Cruz, when petitioner and Hernandez reached the car, petitioner said, "Let's get out of here. We just shot two guys." Cruz testified that the four men then jumped into the car and drove away.

Petitioner took the stand in his own defense, claiming that he was with Maysonet, Hernandez and Cruz on the night in question but that he had nothing to do with the attempted drug deal or the murders. He testified that as he was walking home at approximately 12 p.m. on March 25, he saw a blue car driven by Maysonet, Hernandez and Cruz, his fellow Latin Kings members. Gonzalez testified that the men agreed to give him a ride home. After getting into the car, however, Gonzalez testified that Maysonet drove to the alley between St. Louis and Kimball Avenues, without stopping, pulling a

9 millimeter gun from under the car seat at some point along the way. After parking in the alley, Gonzalez testified that the other three men jumped out of the car while he remained inside, and that Maysonet and Hernandez put their hoodies on, which indicated to Gonzalez that they were going to kill somebody or something. Gonzalez testified that after the men had walked away from the car and out of eyesight, he heard five or six shots, and soon thereafter saw the other men return to the car. He testified that as they drove away, he saw two bodies on the side of the street.

Gonzalez was found guilty of both counts of murder and sentenced to natural life imprisonment. The Illinois Appellate Court affirmed the conviction, *People v. Gonzalez*, 265 Ill.App.3d 315, 202 Ill.Dec. 399, 637 N.E.2d 1135 (1994), and the Illinois Supreme Court denied his petition for leave to appeal. Gonzalez now brings this petition for writ of *habeas corpus*.

## *DISCUSSION*

### I. *Exhaustion and Procedural Default*

 We cannot grant a petition for *habeas corpus* relief unless the petitioner has first exhausted his state court remedies, 28 U.S.C.A. §§ 2254(b), (c), and avoided procedural default of his claims. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Respondent concedes that each of the issues raised in petitioner's *habeas* petition was raised in both the Illinois Appellate Court and the Illinois Supreme Court and that petitioner has exhausted his state court remedies. We agree.

 With regard to procedural default, however, respondent's apparent concession does not end our inquiry. On direct appeal the Illinois Appellate Court clearly ruled that Gonzalez waived a number of his claims by failing to object to them at trial and/or in his post-trial motion.[2] *People v. Gonzalez*, 202

---

**2.** The following lines of questioning were not objected to: (1) the prosecution's direct examination of a detective who testified that a judge had issued an arrest warrant for Chris Hernandez based on the willingness of Justino Cruz to testify in his prosecution (issue I(A) of Gonzalez's peti-

tion); (2) the prosecution's use of Cruz's prior consistent statements during direct examination and closing arguments (issue I(B) of Gonzalez's petition); (3) the prosecution's cross examination of petitioner and direct examinations of Bello and Cruz about petitioner's membership in a

Ill.Dec. at 405, 407, 408, 637 N.E.2d at 1141, 1143, 1144. Although it went on to address the merits of each of the claims, there is no doubt that the Appellate Court intended Gonzalez's failure to make contemporaneous objections at trial to be a separate ground for denial of the claims.[3] Normally, this would end our inquiry since a state court's finding of procedural default precludes a federal district court's review when the state court clearly states that it bases denial of the appeal on that ground. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (procedural default is an independent and adequate state ground); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (same). Federal court review is similarly precluded when the state court explicitly addresses in the alternative the merits of the defaulted claims, as the Illinois Appellate Court did here. *See Rogers–Bey v. Lane,* 896 F.2d 279, 282 (7th Cir.1990), *cert. denied,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990). In the usual case, then, Gonzalez's claims would be barred unless he could show "cause and prejudice" for his procedural default, or that the denial of his petition would constitute a gross miscarriage of justice. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).[4]

■ Here, however, the state has not objected to Gonzalez's procedural default in its answer, a circumstance which permits our review of the merits of petitioner's claims. In *Henderson v. Thieret,* the Seventh Circuit held that although "a district court is permitted ... to raise a [procedural default] defense sua sponte, the court is not permitted to override the state's decision implicit or explicit ... to forego that defense." 859 F.2d 492, 498 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). In this case the state arguably made a knowing and deliberate waiver of its procedural default defense. Although its answer liberally cites to the Illinois Appellate Court decision, the state refers only once to Gonzalez's failure to object at trial (p. 4), and never argues default based on the state court's decision. While the *Henderson* respondent asserted the defense on some claims but not others, implying that its waiver of the latter claims was deliberate, *id.* at 497–98, the respondent's omissions in this case are so glaring that we can only assume they were also intentional.

Regardless, even if the state's waiver was inadvertent, we would decline to raise the issue on our own motion. *See Galowski v. Murphy,* 891 F.2d 629, 634 n. 11 (7th Cir. 1989) (decision whether to consider the merits depends on comity and judicial efficiency principles), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990). While the parties have fully briefed the merits of petitioner's claims, neither has addressed whether Gonzalez had "cause and prejudice" to fail to make contemporaneous objections. Thus, resources would not be expended fruitlessly by addressing the merits. Furthermore, since the Illinois Appellate Court engaged in a full analysis of the merits of each of the claims that it found to have been procedurally defaulted, we can ensure that state substantive law at least is accorded proper deference in our review.

## II. *Due Process Claims*

■ Petitioner asserts that the cumulative and individual impacts of a number of

---

gang (issue I(D) of Gonzalez's petition); and (4) the prosecution's direct examination of Rosa Bello regarding a threat to her life just prior to trial (issue I(F) of Gonzalez's petition).

3. The Appellate Court's discussion of petitioner's claim that a detective's testimony was improperly admitted is indicative of each of its findings of procedural default:

In this case, the record does not indicate that defendant objected to Detective Halvorsen's testimony at trial or in his post-trial motion. Consequently, the argument is waived on appeal. Moreover, even if the argument had been preserved, it would not be persuasive. *People v. Gonzalez,* 202 Ill.Dec. at 405, 637 N.E.2d at 1141.

4. We note that petitioner clearly would have difficulty meeting the prejudice prong of the *Wainwright* test, since there was no legally supportable argument for excluding the statements to which trial counsel failed to object. *See U.S. ex rel. Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987). *See infra* part II for discussion of the merits of each of the above-referenced claims.

allegedly prejudicial evidentiary errors of constitutional magnitude deprived him of his due process right to a fair trial. State evidentiary rulings, however, rarely should be the basis for granting *habeas* relief since the admission of evidence is a matter within the broad discretion of the trial judge. *Cramer v. Fahner*, 683 F.2d 1376, 1385 (7th Cir.1982), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509. Federal review of state evidentiary rulings under § 2254 is limited to where error results in a denial of a specific constitutional right or is of such magnitude as to result in a denial of fundamental fairness. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757 (7th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1974). When a petitioner claims that an error violated his general right to a fair trial, more than a showing of mere prejudice is required; the petitioner must demonstrate that any resulting prejudice amounted to the likelihood that an innocent person was convicted. *See Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir.1992) ("severely prejudicial harm" must be shown); *Cramer v. Fahner*, 683 F.2d at 1385 (error must be " 'material in the sense of a crucial, critical, highly significant factor (in the outcome of the case)' ") (citation omitted).

Here, Gonzalez argues that each of the evidentiary errors alleged in his petition was significant. Since the state relied mainly on the testimony of two witnesses, Bello and Cruz, who arguably had motivations to fabricate their testimony, Gonzalez contends that the state's case was relatively weak and that any prejudice from evidentiary error was prone to tip the balance against him. While we agree that one of the trial court's evidentiary rulings was erroneous and prejudicial, the extent of the prejudice did not violate petitioner's constitutional rights.

### A. *Photographs of the Deceased*

 Petitioner contends that the trial court erroneously admitted into evidence a number of close-up photographs of the decedents and that the error was so fundamentally unfair as to deprive him of a fair trial. We agree that the photographs were improperly admitted into evidence, but find that the

error did not deprive petitioner of due process. In Illinois, photographs of murder victims may be admitted to corroborate oral testimony even when the cause of death or nature of the injuries is uncontested, as it was here. *See People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208, 222 (1971), *vacated in part on other grounds*, 403 U.S. 946, 91 S.Ct. 2279, 29 L.Ed.2d 855. "As long as the photographs have sufficient probative value, they are admissible despite their gruesome and inflammatory nature." *People v. Hopkins*, 160 Ill.App.3d 967, 112 Ill.Dec. 402, 406, 513 N.E.2d 1011, 1015 (1987) (admission proper where cause of death, identification of victim, and nature of crime were not in dispute, since the photographs corroborated testimony and showed the manner in which the wounds were inflicted and the willfulness of the act). However, where the photographs "serve only to inflame the passions of the jury," their prejudicial effect outweighs their probative value and admission is improper. *See People v. Lindgren*, 68 Ill.App.3d 141, 24 Ill.Dec. 883, 887, 386 N.E.2d 87, 91 (1979) (photographs of genital amputation and leg lacerations were improperly admitted where pathologist had given extensive oral testimony about the wounds).

 Appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of the state trial court judge, and a federal court considering a *habeas* petition must not disturb the appraisal absent error of a constitutional dimension. *See Cramer v. Fahner*, 683 F.2d at 1385. At the outset, however, we note our agreement with the Illinois Appeals Court in finding the photographs at issue to have been admitted improperly:

In this case, the record contains testimony about the nature of the wounds and the cause of death of the decedents. The record indicates that defendant objected to all of the photographs that tended to show in detail the injuries inflicted upon the decedents. The photographs to which defendant objected were both grisly and cumulative of the testimony in this case. For example, it is difficult to understand how a photograph showing the gunshot wound to a victim's penis explains the testimony de-

scribing the wound. While the State's argument that the exclusion of photographs depicting a brutal crime may render a trial antiseptic and prevent the State from conveying the degree of brutality involved in a crime is not without merit, we conclude that the photographs in this particular case were clearly more inflammatory than probative of any fact or issue in this case. *People v. Gonzalez*, 202 Ill.Dec. at 407, 637 N.E.2d at 1143.

Nevertheless, *habeas* relief is not justified merely by a finding of evidentiary error. The fact that evidence admitted at trial shocks the conscience does not, standing alone, violate due process. *Lisenba v. People of State of California*, 314 U.S. 219, 228–29, 62 S.Ct. 280, 286–87, 86 L.Ed. 166 (1941). Indeed, it has been stated that the admission of graphic photographs rarely renders a trial fundamentally unfair. *See Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir.1992).

■ Even where photographs are found to have been placed in evidence *solely* " 'to inflame the jury against [the defendant],' " *habeas* relief has been denied. *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir.1994) (photographs graphically depicted the victim's body as it was found the morning after his death) (citation omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995). Two primary witnesses who testified against the petitioner in *Gomez* appear to have been as prone to potential bias as Cruz and Bello were in this case. Both witnesses were with Gomez at the scene of the murder and were initially charged with the crime. *Id.* at 1130. One of the witnesses "basically refused to testify" at Gomez's trial, and the state was forced to introduce his grand jury testimony instead. *Id.* Despite the witnesses' obvious motivation to fabricate their testimony, the jury convicted Gomez, and the federal court reviewing his *habeas* petition found that the wrongful admission of graphic photographs did not deprive him of a fair trial. *Id.* at 1140. Thus, contrary to Gonzalez's contention, evidence of guilt of a magnitude similar to that in the case before us is sufficient to offset the wrongful admission of gruesome photographs. Here, as in *Gomez*, we find that the improperly admitted photo-graphs did not deprive petitioner of due process.

**B. *State Testimony Bolstering Credibility of Witness***

■ Petitioner contends that the trial court's admission of testimony that tended to bolster Cruz's credibility denied him due process. State's witness Detective Halvorsen testified at trial that Cruz's willingness to testify against Hernandez led to a judge's willingness to issue an arrest warrant for Hernandez. Petitioner argues that this testimony was both irrelevant to the case against Gonzalez and prejudicial, since it tended to create the impression that a judge believed Cruz to be credible. Addressing the merits of the claim despite Gonzalez's procedural default, the Illinois Appellate Court held that the disputed testimony did not warrant reversal of petitioner's conviction since the jury had the opportunity to independently assess the credibility of both Halvorsen and Cruz, and there had been no representation that the judge who had issued the arrest warrant had "recommended" charges against Hernandez based on Cruz's agreement to testify for the state. *People v. Gonzalez*, 202 Ill.Dec. at 405, 637 N.E.2d at 1141 (citations omitted).

■ We adopt the Appellate Court's substantive review of the issue. Even if there was evidentiary error, any resulting prejudice was not such as to warrant a finding of fundamental unfairness.

**C. *Admission of Witness' Prior Consistent Statement***

During trial, the state bolstered Cruz's credibility by publishing to the jury a written statement that Cruz had signed two years prior to his testimony. Petitioner claims that the admission of this prior consistent statement, which he argues was as tainted by potential bias as Cruz's testimony at trial, was an error of such magnitude that his due process rights were violated.

The Illinois Appellate Court, however, was not persuaded that the prior consistent statement was inadmissible hearsay. *People v. Gonzalez*, 202 Ill.Dec. at 406, 637 N.E.2d at 1142. Petitioner repeatedly sought to im-

peach Cruz's testimony at trial by referring to the plea bargain to which Cruz had agreed just weeks prior to his testimony. In this context, the state was authorized to rebut the charge of recent fabrication by introducing Cruz's prior consistent statement as long as it was made before he had a foreseeable motive to fabricate. Petitioner argued, as he does here, that since Cruz made the prior statement at issue *after* being arrested for the murders of the Wiley brothers, the motive to lie already existed. *Id.* The Appellate Court disagreed, holding that the fact that Cruz was a suspect in the crime when he made the prior statement did not negate the "rebuttal exception" in this case under Illinois law. *Id.* (citing *People v. Williams,* 147 Ill.2d 173, 167 Ill.Dec. 853, 873, 588 N.E.2d 983, 1003 (1991), *cert. denied,* 506 U.S. 876, 113 S.Ct. 218, 121 L.Ed.2d 156 (1992)).

 In a *habeas corpus* petition we will not review the evidentiary analyses of the state courts unless a specific constitutional right has been violated or error has made the trial fundamentally unfair. *See United States ex rel. Clark v. Fike,* 538 F.2d at 757. Courts have consistently held that the admission of a prior consistent statement when the declarant is available for cross examination at trial, as Cruz was here, is not a question that rises to a constitutional level. *See California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) ("the Confrontation Clause is not violated by admitting a declarant's out-of-court statement, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"); *U.S. v. Dunn,* 851 F.2d 1099, 1101 (8th Cir.1988) ("The availability of the declarant at trial vitiates the main concern of the hearsay rule, which is the lack of opportunity for cross-examination"); *U.S. ex rel. Bryant v. Vincent,* 373 F.Supp. 1180, 1184 (S.D.N.Y.

1974) (question of hearsay not cognizable in a federal *habeas corpus* proceeding where declarant was cross-examined at trial). Furthermore, petitioner has failed to show that the admission of Cruz's prior consistent statement was erroneous, let alone so prejudicial that his trial was rendered fundamentally unfair.[5]

### D. *Evidence of Gang Affiliation*

Petitioner contends that the trial court erroneously admitted testimony regarding his membership in a gang. Both Rosa Bello and Justino Cruz testified that Gonzalez, Cruz, Hernandez and Maysonet were Latin Kings, and the state referred to this testimony in its closing argument. Gonzalez himself testified on both direct and cross examination that he was in fact a member of the street gang. Petitioner claims that evidence of gang membership was irrelevant to the case and so prejudicial that he was denied due process.

 Again, we are hesitant to review the evidentiary decisions of a state trial court in *habeas* review. *See Cramer v. Fahner,* 683 F.2d at 1385. In addition, the Illinois Appellate Court, relying exclusively on Illinois law, found that the trial judge had not erred in admitting the aforementioned testimony. *People v. Gonzalez,* 202 Ill.Dec. at 407–08, 637 N.E.2d at 1143–44 (citing *People v. Gonzalez,* 142 Ill.2d 481, 154 Ill.Dec. 643, 646, 568 N.E.2d 864, 867 (1991) (evidence of gang membership is relevant when it shows a common purpose or design and admissible when its relevance outweighs any prejudicial impact)). The Appellate Court concluded that gang membership was relevant in Gonzalez's trial because it helped explain the witnesses' testimony regarding the significance of pulling up one's "hoodie:"

> Though Cruz and defendant disagreed as to who shot the decedents, both testified

---

5. Indeed, under Rule 801(d)(1)(B) of the Federal Rules of Evidence, it appears that Cruz's prior consistent statement was properly admitted by the trial judge. When the prosecution used the statement during its redirect questioning of Cruz, it offered it "solely to rehabilitate Cruz's credibility rather than as evidence of the matters asserted in those statements," which negates the requirement that the motive to fabricate must not have existed at the time the prior statement was made. *United States v. Harris,* 761 F.2d 394, 399

(7th Cir.1985). Furthermore, we are not convinced that Gonzalez had *the same* motive to fabricate his story when he was arrested as he did when he was bargaining for a reduced sentence. Where the statement in question antedates a defendant's negotiation for immunity or plea bargain, the statement is relevant and properly admissible even if it was made when the defendant had reason to fear criminal or civil liability. *See United States v. Casoni,* 950 F.2d 893, 904–5 (3rd Cir.1991).

that two of the men from the Buick pulled up their "hoodies" as they went to meet the decedents. Cruz testified that this signified that a drug sale or a "stick-up" was to occur; defendant testified that it signified that somebody or something was going to be killed. Neither Cruz nor defendant would be in a position to give this testimony unless they had knowledge of the practices of Latin Kings and the persons pulling up their "hoodies" were members of the Latin Kings. That the two men pulled up their "hoodies" made it more probable that the two men shared a common purpose of robbery or murder or both. *People v. Gonzalez,* 202 Ill.Dec. at 408, 637 N.E.2d at 1144.

Finally, the Appellate Court noted that any prejudice which may have resulted from admission of evidence of Gonzalez's gang affiliation was mitigated at least partially by its equal effect on the credibility of Cruz, one of the state's chief witnesses. *Id.* The Appellate Court thus found that the testimony had been properly admitted.

■■■ We adopt the Appellate Court's reasoning. While evidence of gang membership is likely to be " 'damaging to [defendant] in the eyes of the jury,' " *U.S. v. Rodriguez,* 925 F.2d 1049, 1053 (7th Cir.1991) (citation omitted), under appropriate circumstances gang membership evidence has probative value that outweighs the danger of undue prejudice. *See U.S. ex rel. Hairston, Etc. v. Warden, Illinois State Penitentiary,* 597 F.2d 604, 607 (7th Cir.1979). It appears from the testimony that pulling up one's hoodie prior to committing a crime was a distinguishing practice of Latin King members. Petitioner's argument that the practice is not confined necessarily to that particular gang or to gangs in general is not compelling; the witnesses in petitioner's trial indicated that *in this case* the pulling up of the hoodies was

both meaningful and indicative of their gang affiliation.

■■■ Furthermore, evidence of Gonzalez's membership in the Latin Kings was relevant to explain Cruz's testimony about his role in the crimes. Absent testimony that Cruz and the occupants of the car that picked him up on the night in question were members of the same gang, it would be difficult for the jury to understand why Cruz would quickly agree to participate in criminal activity when just moments before he had been allegedly on his way to his girlfriend's house. *See U.S. v. Rodriguez,* 925 F.2d at 1053 (evidence helped jury understand why defendant was involved with co-defendants and why he quickly agreed to participate in the criminal endeavor). Where evidence of gang membership is relevant to the common motive or plot, and the trial court's ruling is correct, *habeas* relief is not appropriate. *See U.S. ex rel. Rivera v. Peters,* 743 F.Supp. 575, 578 (N.D.Ill.1990).[6]

### E. *Admission of Hearsay Testimony*

Petitioner contends that a police officer's testimony at trial regarding how Gonzalez was first identified as a suspect included inadmissible hearsay and consequently deprived him of due process and his Sixth Amendment right to confront his accusers. Specifically, the officer testified that Maysonet "directed" him and another officer to three locations where petitioner and Hernandez might be found. Petitioner argues that this testimony—much of which was objected to at trial—impermissibly implied that Maysonet, who did not take the stand, identified Gonzalez as a perpetrator of the murders.

■■■ In Illinois, however, testimony is not hearsay where it is introduced "for the limited purpose of explaining the reason the police conducted their investigation as they did." *U.S. ex rel. White v. O'Leary,* 663

---

**6.** Our findings in this section and in section II(C), *supra,* dispose of petitioner's prosecutorial misconduct claims which are asserted informally in his petition and addressed separately in the state's answer. Since it was not error for the trial court to admit testimony regarding Gonzalez's membership in the Latin Kings or Cruz's prior consistent statement, the prosecution did not commit misconduct by referring to this testi-

mony and evidence in its closing argument. Even if there was error, viewed in the context of the entire trial it was not of the sort that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

F.Supp. 233, 236 (N.D.Ill.1987) (citations omitted). This rule parallels the one used in the federal context, where " '[a]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken.' " *United States v. Lazcano,* 881 F.2d 402, 407 (7th Cir.1989) (quoting *United States v. Love,* 767 F.2d 1052, 1063 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986)) (statement not hearsay where used solely "to set the context in which the DEA investigation originated"). Here, the court appropriately instructed the witness to avoid disclosure of the substance of his conversation with Maysonet during their search for Gonzalez. Even if the officer had stated that petitioner was arrested on the basis of information given to him by Maysonet, under Illinois law "such statement would have been [admissible] for the limited purpose of showing why the officer acted as he did." *People v. Daliege,* 40 Ill.App.3d 706, 352 N.E.2d 247 (1976) (citation omitted).

■■■ Finally, even if we were to find that the testimony contained inadmissible hearsay, we would deny *habeas* relief in this case because any effect or influence that the testimony may have had on the jury's verdict was not substantial and injurious. *See Miles v. Burris,* 54 F.3d 284, 289 (7th Cir.1995) (despite finding that hearsay violated petitioner's right to confrontation, *habeas* relief was denied). Indeed, given the fleeting nature of the testimony and the fact that "the statement to which [petitioner] objected concerned Hernandez, not [petitioner]," *People v. Gonzalez,* 202 Ill.Dec. at 408, 637 N.E.2d at 1144, any violation of petitioner's constitutional right to confrontation was harmless error.

## F. Testimony Regarding Implied Threats to Witness

■■■ Petitioner next claims that he was denied a fair trial because Rosa Bello was permitted to testify that someone had attempted to run her and her son over with an automobile shortly before she testified at petitioner's trial.[7] Petitioner argues that although the clear implication of the testimony was that Bello and/or the state's attorney's office believed that petitioner played a part in the aforementioned event, no evidence of such involvement was introduced at trial.

It would have been better if the matter of the state's subsidy of the witness had been handled differently. For example, the state could have agreed with the defense that it would not inquire about the payments or their reason if the defense did not seek to impeach her on the basis of the benefits, or it could have inquired about the reasons on redirect if the defense raised the issue during cross examination. Nevertheless, we conclude that the trial court could reasonably determine that probative value of Bello's testimony outweighed its prejudicial effect and that its admission thus did not constitute constitutional error. As the Illinois Appellate Court stated, "The record shows that the State chose to anticipatorily impeach Bello regarding monies she received from the State to stay in a hotel prior to her testimony." *People v. Gonzalez,* 202 Ill.Dec. at 408–09, 637 N.E.2d at 1144–45. We agree with the court that the anticipatory impeachment was more than a mere pretext or after-the-fact justification for eliciting damaging testimony. Furthermore, although the alleged event took place just days prior to her testimony, the issue of Bello's initial delay in coming forward with information implicating Gonzalez in the murders was a recurring theme in Gonzalez's defense strategy.

7. The text of the relevant portion of Bello's testimony is as follows:

Q. Now, Miss Bello, in exchange for your testimony here today the State's Attorney's office has offered to relocate you; is that correct?

A. Yes.

Q. And in fact the last several days you have been staying in a hotel at the State's, at the expense of the State's Attorney's office; is that correct?

A. Yes.

Q. Why have you been staying at a hotel?

A. Because somebody tried to run me over with my son.

Q. You said somebody tried to run you over?

A. Yes; with my son.

Q. You had your son at the time?

A. Yes. I was on my way to the doctor.

Q. And approximately when did this happen?

A. About 1:30, 2:00 o'clock Friday, last Friday.

Threats of violence such as the one attested to by Bello were relevant to explain her initial reluctance to come forward and, by analogy, testify. *See Gomez v. Ahitow*, 29 F.3d at 1139 (prosecution could have a witness whose credibility had been called into question by her delay in coming forward briefly explain the reason behind the delay, including the fear resulting from her receipt of anonymous threatening phone calls during the delay period).

Contrary to petitioner's assertion, this case is distinguishable from *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). In *Dudley*, the Seventh Circuit granted a petitioner's writ of *habeas corpus* based on a finding that the trial court had erred in admitting a witness' testimony about his having received a series of anonymous and threatening phone calls just prior to trial.

In *Dudley*, the prosecution questioned [the witness] about "how he felt about testifying." *Dudley*, 854 F.2d at 969. The witness stated that he was nervous and, after more prompting from the prosecutor, stated that he had received threatening phone calls the night before. The prosecutor continued to pursue the subject, asking the witness whether he feared for his girlfriend or aunt if he testified. The witness answered that he was fearful and, at the prosecutor's behest, explained his fear more fully. *Gomez v. Ahitow*, 29 F.3d at 1139.

The *Dudley* Court held that "[i]t clearly appears that the prosecutor's intent was to put the threat evidence before the jury as soon as Pointer took the stand," and that the state's argument that the testimony was relevant to explain the witness' nervousness was mere pretext. *Dudley* at 971.

Here, as stated *supra*, the prosecution's rationale for the introduction of Bello's testimony was not pretext. Furthermore, unlike in *Dudley*, the complained-of testimony was extremely brief, not focused on the feelings or fears of the witness, and elicited at the very end of her testimony. The testimony was thus admissible as relevant. Even if the testimony was more prejudicial than proba-tive it was not the kind of error that was " 'of such magnitude that the result [was] a denial of fundamental fairness.' " *Dudley* at 972 (quoting *United States ex. rel. Palmer v. DeRobertis*, 738 F.2d 168, 170 (7th Cir.1984), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984).

### G. *Implication that Petitioner was a Drug Dealer*

 Finally, petitioner contends that he was deprived of due process when the state improperly implied that he was a drug dealer who had been involved in prior drug deals. During its cross examination, the prosecution asked Gonzalez if he had ever been involved in a drug sale. As the Illinois Appellate Court found, however, "defendant's objection was sustained and no answer was given. The record also shows that the jury was properly instructed to disregard questions to which objections were sustained." *People v. Gonzalez*, 202 Ill.Dec. at 409, 637 N.E.2d at 1145. In the context of the entire trial, we cannot conclude that the question rendered the trial fundamentally unfair, especially given the fleeting nature of the inquiry, the judge's immediate steps to cure any prejudice, and the state's lack of an attempt to pursue the objectionable testimony any further.

### H. *Cumulative Impact of Alleged Errors*

As stated *supra*, the impact of petitioner's single meritorious claim—the admission of gruesome photographs—is insufficient to warrant our granting *habeas corpus* relief. Even if each of the claims made by petitioner had merit, their prejudicial impact would not have been likely to result in a different result in Gonzalez's trial. The jury clearly made credibility determinations against Gonzalez and, to a certain extent, in favor of Cruz and Bello in reaching its verdict. None of the alleged evidentiary errors compel us to disturb these findings. *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir.1990) (credibility determinations are properly in the province of the jury and not for a federal court to determine in *habeas corpus* review).

### III. *Ineffective Assistance of Counsel*

As a second ground for *habeas corpus* relief Gonzalez alleges that his defense counsel's failure to object to prejudicial testimony during trial deprived him of his right to counsel under the Sixth Amendment. The state responds that Gonzalez's counsel acted within the bounds of professional conduct and that each of the alleged errors resulted from sound trial strategy.

Under the two-pronged test enumerated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order for a reviewing court to grant relief based on ineffective assistance of counsel, a *habeas* petitioner must first demonstrate that his counsel's performance was so deficient and his errors so egregious that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* At 687, 104 S.Ct. at 2064. There is a strong presumption, however, that petitioner's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Even if petitioner successfully rebuts this presumption, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Petitioner bases his ineffective assistance of counsel argument on each instance during trial that his counsel failed to object to allegedly prejudicial and improperly admitted testimony. *See* note 2, *supra*. Thus, his claim exactly parallels his due process argument, *supra* part II,[8] and we can dispose of it rather quickly. As concluded above, the trial court did not err in admitting any of the testimony highlighted in Gonzalez's petition. Gonzalez's counsel was clearly within the bounds of reasonable professional conduct when he decided not to object to this testimony, since there was little legally supportable argument for objection. *See U.S. ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir. 1987).

Furthermore, we concluded in part II that even if petitioner's arguments had merit, the admission of the contested pieces of evidence and testimony, taken individually and as a whole, did not prejudice the trial to such an extent that a different result was reasonably probable if the testimony had been kept from the jury. Applying this reasoning and analysis to petitioner's ineffective assistance of counsel claims, we find that the cumulative impact of the claims—even if they had been meritorious—would have fallen short of meeting the prejudice prong of the *Strickland* test.

### CONCLUSION

Gonzalez's petition for *habeas corpus* relief is denied.

---

8. Petitioner's counsel properly objected to the admission of the gruesome photographs (issue I(C) in Gonzalez's petition), one instance of testimony relating to petitioner's membership in a gang (issue I(D)), and testimony regarding the police investigation which arguably included hearsay, (issue I(E)). Petitioner thus does not reassert these claims here.